A jury found defendant (appellant) guilty on a trial on the following indictment:
 "THE GRAND JURY OF COVINGTON COUNTY CHARGES THAT BEFORE THE FINDING OF THIS INDICTMENT, WILLIE LEE AINSWORTH . . . DID KNOWINGLY OBTAIN OR EXERT UNAUTHORIZED CONTROL OVER A MOTOR VEHICLE, TO-WIT: A 1975 GRAND PRIX PONTIAC AUTOMOBILE, THE PROPERTY OF MARY LOU ARMSTRONG, WITH THE INTENT TO DEPRIVE THE OWNER OF SAID MOTOR VEHICLE IN VIOLATION OF TITLE 13A-8-3 OF THE CODE OF ALABAMA 1975, AND AS LAST AMENDED, AGAINST THE PEACE AND DIGNITY OF THE STATE OF ALABAMA."
According to Section 13A-8-3 (c), theft of property in the first degree is a Class B felony, which by § 13A-5-6 (a)(2) is punishable by imprisonment for "not more than 20 years or less than 2 years." At a sentence hearing conducted after defendant had been given due notice of the State's intention to proceed against him under the Habitual Felony Offenders Act, and it was shown that defendant had been previously. convicted of three felonies, the court sentenced him to imprisonment for life, which punishment was made mandatory under § 13A-5-9 (c)(2).
No issue is raised on appeal as to the sufficiency of the evidence to support the verdict. Nevertheless, we deem it appropriate to state here a sufficient part of the evidence to assure that proper consideration is given to each of the issues raised on appeal. In doing so, we quote from the "STATEMENT OF FACTS" contained in brief of counsel for appellant, which appellee states in its brief "is substantially correct and is adopted herein by reference." We will endeavor to limit the quotations that follow to those that have a material bearing upon the issues raised on appeal:
 ". . . The gist of the story is that Mary Lou Armstrong had a Pontiac Grand Prix for sale which was on display at Christine's Country Barbecue on the 18th day of August, 1983. The defendant Willie Lee Ainsworth saw this automobile, and after making inquiry at Christine's Country Barbecue, ascertained that the Pontiac *Page 469 
belonged to Mary Lou Armstrong. After preliminary discussions during the afternoon of August 18, Ainsworth and Mary Lou Armstrong together took a test drive in the Pontiac. The test drive was a short one, but by the time the two had returned to Christine's Country Barbecue a deal had supposedly been reached as to the sale of the car. According to Mrs. Armstrong, she was talked into driving Mr. Ainsworth back to Red Level, Alabama, a distance of approximately thirteen miles, where he would obtain the money at his home to pay her for the automobile that very night. . . ."
 ". . . Mrs. Armstrong testified that Ainsworth pulled over to the side of the highway just outside Red Level and told her that he wanted to leave his truck at a service station in Red Level. The journey continued on to the station in Red Level, Alabama, at which Ainsworth left his pickup truck, and transferred his effects, including a bottle of whiskey from his truck into the Pontiac. . . ."
 "Mrs. Armstrong continued to drive, following directions given to her by Ainsworth. They drove down to the Brooklyn Road area south of Andalusia and got on to some back country roads still continuing, according to Mrs. Armstrong, on their trip to the house of Willie Lee Ainsworth."
 "The couple finally arrived at a driveway leading to a brick home on a country road. . . . There was a driveway leading up to the house, but an unusual predicament was presented in that an automobile was parked in the driveway evidently occupied by two persons having sexual relations. Mrs. Armstrong said that it was `somewhere around 6:30' when they arrived at the blocked driveway. Up until this time, according to Mrs. Armstrong, Ainsworth had said nothing suggestive to her. The two went on down the road and turned around and came back along the same road in the vicinity of the driveway. At this time Mrs. Armstrong said that Ainsworth asked her to stop and let him drive because if `they' should see him driving, they would get out of his driveway. At that point, Ainsworth took the wheel and started driving the automobile. The driveway to Mr. Ainsworth's `home' was still occupied when the two returned to the driveway, and at this time Mr. Ainsworth suggested that one of the occupants of the automobile was the daughter. . . .
 "Again the couple drove on by, and at one point they stopped and both Mary Lou Armstrong and Willie Lee Ainsworth got out of the car, looked under the hood, and examined the battery. When they left this spot, Ainsworth continued to drive and returned back to the driveway at the brick house. This time the car with the mysterious couple was gone from the driveway."
 "It was at this point that Mary Lou Armstrong said that Ainsworth started trying to proposition her. He offered her five hundred additional dollars for her automobile in exchange for sexual favors. Mary Lou Armstrong stated that she resisted his advances and resisted Ainsworth when he started trying to kiss her and handle her. The incident allegedly continued until Ainsworth told Mary Lou Armstrong to either get into the back seat and have sex with him or to get out of the car. Mary Lou Armstrong got out of the car and then Ainsworth drove off with her automobile. She said that Ainsworth told her that she would find her automobile at the service station in Red Level where he had left the truck. The automobile was subsequently located in an abandoned condition near the Flomaton-Wallace Exit of Interstate 65 which was twelve miles south of the Castleberry Exit. It would appear from the record that the automobile was found approximately five days later by Woodrow Stewart, an Alabama State Trooper, at a point approximately twenty miles from the Brooklyn Road area where the incident is said by Mrs. Armstrong to have occurred. The trooper testified that spark plug wires had been removed from the engine, the *Page 470 
breather assembly was in the rear seat, along with a pillow, an empty cassette container, and that no personal effects were found in the automobile other than a Social Security card bearing the name Mary Lou Armstrong.
 "In addition to the testimony of Mary Lou Armstrong, Covington County Sheriff Don Harrell testified to a conversation with Willie Lee Ainsworth after his arrest, the admissibility of which is one of the issues in this appeal. The substance of Sheriff Harrell's testimony was that Ainsworth had talked to him while he was in jail in Covington County under charges of sexual abuse or rape as well as the theft of the Armstrong vehicle. Sheriff Harrell testified that Ainsworth told him that he, the sheriff, had been knowing him a long time and that he knew he was not guilty of the charges of rape or sexual abuse but that he had taken the lady's car. Ainsworth stated however that that was all he was guilty of. Sheriff Harrell testified that Ainsworth did not make any statement to him as to whether or not he intended to keep the car. Sheriff Harrell further testified that in his questioning of Ainsworth there was no evidence that Ainsworth tried to dispose of the car or sell it or anything of that nature after he obtained possession of it. Sheriff Harrell further testified that the rape and sexual abuse charges were presented to, but were no billed by the grand jury to the best of his knowledge, although he was not absolutely sure."
The only witnesses testifying in the case were witnesses called by the State. When the State rested its cash, defendant's counsel stated promptly that the defendant also rested.
 I.
By his first issue, appellant contends that "the trial court committed reversible error by refusing defendant's requested jury charges `numbers 1, 2, and 3.'" We consider separately each of said refused charges requested in writing by defendant.
Defendant's requested Charge No. 1 states:
 "The Court charges you that where one takes the vehicle of another without his permission, intending only to drive it somewhere and leave it where the owner may reclaim it, he is not guilty of theft of property in the first degree."
We realize that under the evidence in this case it is possible that in taking the vehicle of the owner without her permission, the defendant intended "only to drive it somewhere and leave it where the owner may reclaim it," but there is no evidence in the case to support an inference that such was the intention of defendant. The charge is predicated upon an assumption of fact as to the actual intent of defendant for which the evidence furnishes no basis. The trial court was correct in refusing the charge.
Defendant's requested Charge No. 3 states:
 "The Court charges you that a person commits the crime of unauthorized use of a vehicle if knowing that he does not have the consent of the owner, he takes, operates, exercises control over or otherwise uses a propelled vehicle."
"§ 13A-8-11 of the Code of Alabama."
Section 13A-8-11 is not the Code section upon which the indictment in the instant case was based. Furthermore, it is not a lesser included offense contained in the indictment in the instant case. Barnett v. State, Ala.Cr.App., 440 So.2d 1134
(1983). Therefore, Charge No. 3 was abstract, and to have given it would have tended to mislead and confuse. Its refusal was not error.
Defendant's requested Charge No. 2 commences with the words "The Court charges you that" and then continues with the precise language of § 13A-8-1 (2), which provides:
"To `DEPRIVE' . . . means:
 "a. To withhold property or cause it to be withheld from a person permanently or for such period or under such circumstances that all or a portion of *Page 471 
its use or benefit would be lost to him; or
 "b. To dispose of the property so as to make it unlikely that the owner would recover it; or
 "c. To retain the property with intent to restore it to the owner only if the owner purchases it or leases it back, or pays a reward or other compensation for its return; or
 "d. To sell, give, pledge, or otherwise transfer any interest in the property; or
 "e. To subject the property to the claim of a person other than the owner."
At the first opportunity after the oral charge of the court to the jury and before the case had been submitted to the jury, defendant's counsel made known his objections to the court's failure to "grant our requested jury Charge No. 1, No. 2, and No. 3 on the grounds that those are correct statements of law." After a short colloquy between the court and defendant's counsel, the court replied:
"All right. Overrule the objections and the motions."
In a one-page argument in appellee's brief as to the court's refusal of defendant's requested written Charge No. 2, appellee endeavors to show that the defendant was not prejudiced thereby. We agree with the first sentence of appellee's argument:
 "Appellant's requested jury Charge number `2' is the verbatim definition of the word `deprive' found in Code of Alabama, 1975, Section 13A-8-1 (2)."
However, we disagree with the last sentence of appellee's argument, "the state submits, therefore, that Appellant was not prejudiced, and no error occurred when the trial court refused Appellant's charge." It is clear that the statutory law set forth in defendant's requested Charge No. 2 was not covered in the court's oral charge. Since Mitchell v. State, 210 Ala. 457,98 So. 285 (1923), it has been uniformly held that it is the mandatory duty of a trial judge to instruct the jury orally on the different and distinguishing elements of the offense charged and that in the absence of such instructions from the court, the jury could not intelligently comply with their duty as jurors. Miller v. State, Ala.Cr.App., 405 So.2d 41, 48
(1981). As stated by Justice Maddox, all other justices concurring, in Chavers v. State, Ala., 361 So.2d 1106, 1107
(1978):
 ". . . In fact, our decisions are to the effect that every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility. Burns v. State, 229 Ala. 68, 155 So. 561
(1934)."
We conclude that the trial court committed reversible error by its refusal of defendant's requested Charge No. 2.
 II.
The next issue presented by appellant is thus stated in his brief:
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PERMITTING THE STATE TO ARGUE BEFORE THE JURY THAT IT WAS UNIMPORTANT WHETHER OR NOT THE DEFENDANT KNEW THAT THE OWNER WOULD BE DEPRIVED OF THE AUTOMOBILE FOR A SUBSTANTIAL LENGTH OF TIME."
In arguing this issue, appellant refers to several incidents during the arguments of attorneys for the parties in which the trial court either overruled objections of the defendant to the argument of State's counsel or sustained objections of the prosecution to argument of defendant's counsel. Appellant completes his argument as to this issue by the following paragraph:
 "The defense believes that a careful review of the record during the summation of the parties, coupled with the court's failure to grant defendant's requested jury charge number 2, will show that the court failed to properly appreciate the fact that the new Criminal Code is structured in such fashion that the definitional sections are extremely important to a proper construction of the language used *Page 472 
in describing the substantive offense. The court's failure to properly understand and instruct the jury as to the meaning of the term `deprive' was a persistent and continuing error which continually interfered with the defendant's only real defense."
In most of the instances in which an objection was made to argument of opposing counsel made the basis of this issue, the objection was made in the midst of a sentence of the argument objected to, which tends to obfuscate the question as to the validity and propriety of the argument to which the objections were made. At any rate, the issue now under consideration is so interwoven with that part of Issue I pertaining to the refusal by the trial court of defendant's requested charge No. 2 that our determination as to Issue I makes it unnecessary for us to consider further Issue II.
 III.
The third issue presented by appellant is thus stated in his brief:
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY CALLING THE CASE TO TRIAL BEFORE THE JURY VENIRE IN THE ABSENCE OF THE DEFENDANT AND INSTRUCTED THAT HE BE BROUGHT FROM THE JAIL IN THE PRESENCE OF THE JURORS."
The incident referred to by the issue quoted is shown by three full pages of the transcript, which disclose that at the time the case was called for trial, the available jurors that had been summoned for jury service during the week were in the courtroom and were able to hear the call of the case for trial and were made aware of the fact that the defendant was in jail at the time and was brought down by officers, at the direction of the judge, to appear and be tried. We agree with appellant that such a situation should have been avoided, but we have considerable doubt as to the identity of the person or persons responsible for the unfortunate occurrence. We do not feel that it will likely occur on another trial of this case, and we will not attempt to resolve this issue.
 IV.
By the last issue presented by appellant, he complains of the "Court's decision to permit the State to introduce an oral statement of the defendant undisclosed in response to the defendant's motion for discovery." As such oral statement of the defendant has now become disclosed and the question presented by this issue will not arise on another trial of the case, it would serve no good purpose to attempt to determine the particular issue.
For the trial court's refusal of defendant's requested Charge No. 2, the judgment of the trial court should be reversed and the cause remanded for a new trial.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
All Judges concur.