From a conviction for the offense of theft of property in the second degree, in violation of § 13A-8-4, Code of Alabama
(1975), this appeal follows. For the reasons outlined below, the judgment of conviction is due to be affirmed, but the case is remanded to the trial court for proper sentencing.
Mr. Harry T. Branton, manager, Payless Shoes, testified that on January 27, 1981, he, along with another employee, was conducting business at the store. Around 2:30 that afternoon, a black male (who was identified as the appellant) came into the store. Because the appellant was the only customer at the store, Branton had the opportunity to observe him and his activities. As the appellant was about to leave, an employee gave Branton "the signal" that a possible theft had occurred.[1]
The appellant was wearing a blue windbreaker and had a pair of leather Brazilian shoes, valued at $34.99, stuffed inside his windbreaker — one in each pocket. When the appellant was asked about the shoes, he responded: "What shoes? I ain't got your shoes." Branton stated he "reached out to grab [the shoes] and I touched his jacket and he knocked my hand away." The appellant told the store manager: "Man, I need these shoes."
When the appellant was told that he would need to pay for the shoes before he left the store, he replied: "I don't have any money." According to Branton, the appellant then "walked very quickly to the door and when he hit the door, he ran out." Branton observed the appellant running toward a brown Ford Mustang automobile and asked his co-worker for the keys to his car. Branton then testified as follows:
 "Q When you got outside, what did you see the Defendant do in relationship to that brown Mustang, if anything?
"A He pulled the tag off the back of the car.
"Q What did he do then?
 "A He took the tag with him, threw it in the back seat of the car, got in the car and took off.
"Q And what did you do next, yourself, please?
"A I jumped in my employee's car and followed.
 "Q And, did you have an occasion to catch up with him?
 "A I was right behind him for several blocks. Once we got on Park Street, he lost me when he crossed the intersection [at] Main Street.
 "Q Let me ask you this. The point in time when you got in the car and followed his car, described what manner or fashion he was driving his car please, sir?
"A Well, he left in a hurry.
 "Q All right. Now, did you ever lose sight of him, in the car?
 "A Once we crossed Park, he caught the light and I didn't. I stopped at the light and when the light turned green, I went forward. And, I didn't see his car again, so I kept going straight and I got up to the end of the street and [saw] a police officer."
Branton told the police officer what had happened and then returned to the store.
At this point in the trial of the case, a hearing on a defense motion to suppress was held out of the presence of the jury. David Kirkland, Investigator, Criminal Investigation Division, City of Dothan Police Department, testified that he was in charge of the investigation of the theft at the Payless Shoe Store which occurred on January 27, 1981. Before taking the appellant's statement, Detective Kirkland stated that he advised him of his constitutional rights. The appellant executed a "waiver *Page 6 
of rights form," which was admitted into evidence. According to Detective Kirkland, the appellant appeared to understand his rights; he did not appear to be under the influence of any drugs or narcotics; he was not promised any reward or special treatment in exchange for making the statement; and he was not threatened or abused in any way in an effort to coerce him into making a statement. The statement which the appellant made, according to Detective Kirkland, was as follows:
 "[The appellant] denied stealing the shoes, but he did admit telling the man that he had stolen the shoes. But later, he changed it and said that the reason he said that was that he was just kidding with the store personnel manager.
 "Q Did you ask him anything else, Detective Kirkland, about what he did on the scene?
 "A I asked him what he ran from the place for. And he told me he thought it was a good idea at the time."
On cross-examination, it was established that the statement was not taped, and was not reduced to writing. Detective Kirkland testified as follows:
 "[Defense counsel]: All right. Is this a formal statement that he signed that you are testifying to or just what y'all had, just the jist of the conversation?
 "A It is just the jist of a conversation between the two of us.
"Q This was not a formal statement?
"A No. There was no written or taped statement. No.
 "Q But, you went ahead and informed him of his rights at that time?
"A Yes.
"Q Before you talked to him that day?
"A Yes, I did.
 "Q So, you are testifying just from your memory, using that to refresh your recollection using that report?
"A I am using my notes to refresh my recollection.
"Q All right. You are just using your notes then?
"A Yes.
"Q Okay.
"[Defense counsel]: This is all I have, Your Honor."
"REDIRECT EXAMINATION
"BY MR. VALESKA:
 "Q Do those notes, Detective Kirkland, the statement that you just gave us is what the Defendant said truly and accurately depict what was stated at that time?
"A Yes, sir. It does.
 "MR. VALESKA: We offer the statement in front of the Jury, Your Honor.
 "MR. HOLLOWAY: We just enter an objection, Your Honor.
 "THE COURT: All right. And, I deny the motion to suppress the statement."
The trial continued and the jurors returned to the courtroom.
Detective Kirkland's testimony was presented to the jury without any objection being made by defense counsel. At the close of Detective Kirkland's testimony, the State rested and defense counsel moved for a judgment of acquittal. After the trial court denied the motion, the defense rested its case. The jury deliberated and returned a verdict finding the appellant guilty of the offense of theft of property in the second degree. A separate sentencing hearing was held and the appellant received a term of ten years' imprisonment.
The sole issue raised by this appeal is stated as follows: "Did the court commit prejudicial error by allowing a police officer to testify to statements of appellant using notes to refresh his recollection without any foundation being laid for the use of said notes?" The appellant argues that none of the "prerequisites" of a proper predicate for the use of the notes was established and, for this reason, the "appellant's motion to suppress the statements should have been sustained."[2] In support *Page 7 
of his position, the appellant relies on the case of McCrightv. State, 43 Ala. App. 292, 189 So.2d 581 (1966).
In McCright, the defendant's conviction was reversed for failure to establish the correctness of a memorandum which was used to "refresh [the witness's] present recollection."McCright, however, is distinguishable because defense counsel in McCright "objected to [the] use [of the memorandum] upon the ground that the witness didn't make the memorandum himself nor did he know who did make it." Id., 43 Ala. App. at 293,189 So.2d at 582. In the present case, no objection was made either during the hearing on the motion to suppress or during the trial of the case in front of the jury.[3] In fact, as noted above, after Detective Kirkland testified that he was referring to his notes, defense counsel merely stated, "Okay." As this court has noted, a "rule of long standing in Alabama" is that "objections must be timely interposed and an adverse ruling had from the trial court before a legal question is preserved for appellate review." Kendricks v. State, 378 So.2d 1203, 1206
(Ala.Cr.App. 1979). Thus, this issue has not been preserved for review.
In the present case, the memorandum and notes were not admitted into evidence. The evidence presented at the hearing on the motion to suppress, as well as during the trial of the case, concerns the testimony of the police officer. The oral statements made by the appellant were properly admitted into evidence after the proper "voluntariness predicate" had been established. Luster v. State, 433 So.2d 481, 485 (Ala.Cr.App. 1983). Thus, there was no error.
In all respects, the conviction of the appellant is due to be affirmed. The sentencing of the appellant, however, may have been improper. At the separate sentencing hearing, the trial court reviewed a presentence report which refers to at least one prior felony conviction of the appellant. The trial court initially noted that "[t]he Habitual Offender Act could come into play here," due to the appellant's previous criminal activity. Since the State had not given notice to the appellant of its intent to proceed under the recidivist statute, the trial court concluded that the appellant would be sentenced under the "regular law."
The provisions of the Alabama Habitual Felony Offender Act, however, are mandatory. The trial court has no discretion "as to whether a repeat offender should be punished under the statute." Gray v. State, 455 So.2d 163, 167 (Ala.Cr.App. 1984),citing, Watson v. State, 392 So.2d 1274 (Ala.Cr.App. 1980),cert. denied, 392 So.2d 1280 (Ala. 1981). Additionally, the State's prosecutor has "no discretion as to whether or not to produce evidence of prior convictions and must do so if he is aware of the accused's record." Gray, citing Miliner v. State,414 So.2d 133 (Ala.Cr.App. 1981).
For these reasons, we must remand this case to the trial court for proper sentencing. From a review of the presentence report, it would appear that the appellant has been previously convicted of at least one felony. Of course, it may be that the State is unable to prove any prior convictions for purposes of the Act. If this is the case, the trial court may simply enter an order informing this court of the fact that the appellant has been sentenced properly. Should it appear, however, that proper proof of prior convictions can be made, the State should so inform the appellant and, after due notice, a sentencing hearing should be held. A transcript of those proceedings, along with the decision of the trial court, should be forwarded to this *Page 8 
court for consideration. In all other respects, the judgment of the trial court is due to be affirmed.
REMANDED WITH INSTRUCTIONS.
All the Judges concur.
 ON RETURN TO REMAND
This case was remanded to the trial court for a sentencing hearing. A return has now been filed which shows that, after due notice to the appellant, a sentencing hearing was held. At the sentencing hearing, the State introduced evidence of a prior felony conviction, and the appellant was sentenced to 10 years' imprisonment pursuant to the provisions of the Alabama Habitual Felony Offender Act.
OPINION EXTENDED; AFFIRMED.
All the Judges concur.
[1] Branton testified that his employee, Kenneth Wachob, gave him a "thumbs up" sign to indicate that a "shoplifting" had occurred.
[2] It would appear that the appellant is attempting to argue that his motion to suppress should be seen as an objection to the police officer's use of his notes. A hearing on a motion to suppress, however, is usually directed toward the method and manner by which incriminating statements have been obtained from the accused. Here, there was no question of the voluntary and knowing waiver of rights prior to the time that the statements were made.
[3] Other cases cited by the appellant also indicate that an objection was made at the trial court level. Had a proper objection been made at the trial court level, it is apparent that the witness's use of his notes to "refresh his memory" would have been proper under the "doctrine of present recollection revived." Walker v. State, 428 So.2d 139, 142
(Ala.Cr.App. 1982). Since no objection was made, however, this issue has not been preserved for appellate review.