[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 764 
Charles Eugene Thornton, the appellant, was indicted for criminal solicitation of a controlled substance, in violation of § 13A-12-202, Code of Alabama 1975 (Supp. 1989). The jury found him "guilty as charged in the indictment," and the trial judge sentenced him to a term of life imprisonment as a habitual felony offender.
During October of 1988, several members of the Birmingham Police Department were participating in a federally-funded drug program known as "Cainebreak." On October 25 of that year, two officers were placed on the corner of 4th Avenue North and 2nd Street North in Birmingham, Alabama, posing as drug dealers. One of the officers, James Jackson, made eye contact with this appellant, who was travelling in his car on 4th Avenue. The appellant then turned on to 2nd Street. Jackson walked out to the car and had a conversation with this appellant. This conversaton was recorded by means of a hidden transmitter worn by Jackson and a receiver which was in a surveillance van about one-half block away.
The appellant was stopped by a patrol car, based on the information received from Jackson. The appellant was interviewed and released. The substance of his conversation with Jackson, as recorded, was presented to a grand jury, which indicted the appellant.
 I
Section 13A-12-202, Code of Alabama 1975 (Supp. 1989), originally appeared at § 20-2-161, Code of Alabama 1975 (Supp. 1988) (transferred). This statutory code section was "transferred" from title 20 to title 13A of our code by Act 88-918. Act No. 88-918, § 2(7), 1988 Ala. Acts.
Section 20-2-161 was the statutory codification of Act 87-612. Act No. 87-612, § 2, 1987 Ala. Acts. The act remained unchanged when it was transferred to title 13A by Act 88-918.
Section 2 of Act 87-612 reads as follows:
 "Section 2. (a) A person is guilty of criminal solicitation to commit a controlled substance crime if he engages in the conduct defined as criminal solicitation in Code of Alabama 1975, § 13A-4-1(a), and the crime solicited is a controlled substance crime.
 "(b) The principles of liability and defenses for criminal solicitation to commit a controlled substance crime are the same as those specified in Code of Alabama 1975, § 13A-4-1(b)-(e), and § 13A-4-5.
 "(c) Criminal solicitation to commit a controlled substance crime shall be punished the same as the controlled substance crime solicited."
The statutory sections to which the above portion of the 1987 act refer, §§ 13A-4-1 and -5, Code of Alabama 1975, were both previously codified laws (i.e., enacted prior to the enactment of the 1987 act). See Act No. 77-607, §§ 1001 and 1020, 1977 Ala. Acts.
The appellant argues that the legislature violated the mandates of this State's constitution by failing to include §§ 13A-4-1 and -5 in the 1987 act. Specifically, the appellant claims that the 1987 act is constitutionally defective because the legislature could not cast an informed vote based on the information before them in the 1987 bill. The appellant contends that article IV, § 45, of the Constitution of Alabama (1901) requires the inclusion of all extraneous materials so that the proposed act will be clear on its face without reference to outside materials.
Article IV, § 45, states:
 ". . . . Each law shall contain but one subject, which shall be clearly expressed in its title . . .; and no law shall be, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred, shall be re-enacted and published at length." (Emphasis added.)
Article IV, § 45, has been addressed by this court on numerous occasions. In Dickerson v. State, 414 So.2d 998, 1006
(Ala.Cr.App. 1982), we stated:
 "The purposes of § 45 have been stated to be: (1) to fairly apprise the public *Page 766 
of the subjects of legislation that are being considered so that it may have an opportunity to respond thereto, (2) to truly inform the members of the legislature of the subject of a bill so that they may intelligently and faithfully execute their duties, and (3) to prevent the inclusion of matter in a bill incongruous with the title which possibly could not individually obtain legislative assent but when combined with other matter into one bill would by reason of such gain favor and secure passage. State v. Hester, 260 Ala. 566, 72 So.2d 61 (1954); See also Alabama Education Association v. Grayson, Ala., 382 So.2d 501
(1980)."
For other cases discussing the purpose and applications of § 45, see Ex parte Hilsabeck, 477 So.2d 472, 475 (Ala. 1985);Dove v. City of Montgomery, 452 So.2d 1382, 1384 (Ala.Cr.App. 1984); Fowler v. State, 440 So.2d 1195, 1198 (Ala.Cr.App.),cert. denied (Ala. 1983).
Furthermore, in Dickerson we made clear the standards to be applied when reviewing a challenge to a statute on the basis of article IV, § 45.
 "Section 45 is not to be exactingly enforced in such a manner as to cripple legislation or to be enforced with hyper-critical exactness, but is to be accorded a liberal interpretation. B.F. Goodrich Company v. Butler, 56 Ala. App. 635, 324 So.2d 776, cert. denied, 295 Ala. 401, 324 So.2d 788 (1975).
 "The test in determining the constitutionality of an act under § 45 is 'whether the title of the act is so misleading and uncertain that the average legislator or person reading the same would not be informed of the purpose of the enactment.' Alabama Education Association v. Grayson, supra at page 505."
Section 45 in no way requires the inclusion of already existing statutes in a new act, where the new act refers to the pre-existing statute by code section only, unless the mentioned statutes are being "revived, amended, extended or conferred." In the act at issue, Act 87-612, the collateral statutes mentioned in the act merely define a term or make reference to possible defenses.
In 1895, the Alabama Supreme Court addressed a very similar issue and stated:
 "It was never intended by the constitution that every law which would affect some previous statute of variant provisions on the same subject should set out the statute or statutes so affected at full length. . . . Reference is made to such laws, not to affect or qualify the substance of the legislation or vary the terms of the act, but merely for the formal execution of the law. The evil in view in adopting this provision of the constitution was the incorporating into acts of the legislature, by reference to other statutes, of clauses and provisions of which the legislators might be ignorant, and which, affecting public or private interests in a manner and to an extent not disclosed upon the face of the act, a bill might become a law which would not receive the sanction of the legislature if fully understood."
State ex rel. Bragg v. Rogers, 107 Ala. 444, 19 So. 909, 912
(1895) (also includes a brief history of the original version of § 45 in the 1861 Constitution and the minor variations in the 1865 and 1868 Constitutions).
More recently, our Supreme Court stated:
 "It is well established, therefore, by decisions of this court, that if the law in itself is complete and intelligible and original in form, it does not fall within the meaning and spirit of section 45 of the Constitution, although resort in the execution of its provisions must be had to independent sources, including other statutes, or records of commissions or boards. Cases supra."
Boyd v. Edwards, 284 Ala. 459, 225 So.2d 863, 865 (1969).
Thus, we determine that the reference to collateral statutes in Act 87-612 does not violate the spirit or the rule of article IV, § 45, of our constitution.
 II
The appellant next contends that his motion for judgment of acquittal should *Page 767 
have been granted. In support of his contention, the appellant calls this court's attention to § 13A-4-1(c), Code of Alabama 1975.
It reads as follows:
 "(c) A person is not liable under this section when his solicitation constitutes conduct of a kind that is necessarily incidental to the commission of the offense solicited. When the solicitation constitutes an offense other than criminal solicitation which is related to but separate from the offense solicited, defendant is guilty of such related offense only and not of criminal solicitation."
The appellant argues that this sub-section precludes his conviction for criminal solicitation, since the appellant could have also been charged and convicted of an attempt to commit a controlled substance crime, in violation of § 13A-12-203, Code of Alabama 1975 (Supp. 1989), as defined in § 13A-4-2, Code of Alabama 1975.
While there are no cases in Alabama which address this statutory defense, we note that the commentary to § 13A-4-1
speaks to the appellant's concern.
 "Sometimes inchoate offenses will overlap and defendant's conduct will allow his being indicted for more than one of the offenses. The offense of solicitation is not an attempt per se. However, frequently solicitation accompanied by some overt act on the part of defendant may equate an attempt. While the two offenses are separate, looking at the matter pragmatically, in states which have abolished common law offenses and failed to provide for the statutory crime of solicitation, some courts have frequently permitted common law solicitation to be punished as attempts.
". . . .
 ". . . . The need for such [an] anticipatory offense is obvious. There is a need to distinguish solicitation cases from 'attempts,' especially where the type of 'overt' conduct required by the defendant in order to equate an attempt is sometimes unclear or uncertain.
 "In some criminal enterprises a sufficient overt act on the part of [a] defendant cannot be proved so as to make the crime of attempt, and the person solicited has not yet agreed (such as waiting for further discussions). . . ."
Ala. Code § 13A-4-1 Commentary (1975).
The State argues that the facts in this case do not support a finding that this appellant "attempted" to commit a controlled substance crime. Specifically, the State argues that the appellant did not commit a sufficient overt act to warrant a finding that the appellant "attempted" to purchase and possess drugs.
The transcript of the conversation between the appellant and Jackson, as recorded, reveals the following:
"JACKSON: Hey.
"THORNTON: I need some fours, man.
"JACKSON: Dilaudid? Fifty five . . .
"THORNTON: I want, I want two for a hundred, man.
"JACKSON: Huh?
"THORNTON: Two for a hundred. That's all I got.
"JACKSON: I didn't hear what you said.
"THORNTON: Let me circle around.
"JACKSON: That's all you got, a hundred dollars?
"THORNTON: That's all I got. Two for a hundred.
 "JACKSON: Okay. I'm gonna sell you two dilaudids for a hundred bucks. Just ride around the block, pull in front of the car.
"THORNTON: Okay.
"JACKSON: Alright.
 "THORNTON: I'll, I'll, I'll just right back here, man. Hundred dollars not worth waiting.
 "JACKSON: Just pull right by that car over there if that's okay.
"THORNTON: It's hot over there right now.
 "JACKSON: Alright. Right here is fine. I'll meet you back up here.
"THORNTON: Alright." (R. 377.)
As the appellant was circling the block, a marked police unit stopped him. The appellant was interviewed and then released. *Page 768 
In Alabama, it is a violation to solicit someone to commit a controlled substance crime. Ala. Code § 13A-12-202 (1975) (Supp. 1989). To be guilty of "criminal solicitation," one must intentionally "solicit, request, command or importune" another to engage in conduct which constitutes a crime. Ala. Code. §13A-4-1(a) (1975). See 22 C.J.S. Criminal Law § 125 (1989).
There is no doubt that the appellant committed the act of criminal solicitation, since he asked the undercover police officer to sell him two dilaudid pills for $100. It is not necessary that an actual sale be completed for one to be guilty of solicitation. See Kimbrough v. State, 544 So.2d 177, 179
(Ala.Cr.App. 1989).
The issue, however, is whether the conduct of the appellant constituted a sufficient overt act so that he could have been convicted of criminal attempt. This court addressed this issue, at length, in Whiddon v. State, 53 Ala. App. 280, 299 So.2d 326,329-30 (1973).
 "As to when the conduct of a defendant charged with attempt to commit a crime amounts to an overt act is illustrated in Groneau v. State, Fla.App., 201 So.2d 599, 603, wherein it is said:
 " 'Mere intention to commit a specific crime does not amount to an attempt. Preparation alone is not sufficient. Something more is required than mere menace, preparation or planning. The attempt is complete and punishable, when an act is done with intent to commit the crime, which is adapted to the perpetration of it, whether the purpose fails by reason of interruption, or for other extrinsic cause. State v. Wilson, 30 Conn. 500, 506; State v. Enanno, 96 Conn. 420, 427, 114 A. 386. The act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. There must be some appreciable fragment of the crime committed and it must be in such progress that it would be consummated unless interrupted by circumstances independent of the will of the attempter. It is not, however, essential that the actor would have actually succeeded if he had followed the course of conduct upon which he had embarked. State v. Mazzadra, 1954, 141 Conn. 731, 109 A.2d 873. 1 Wharton Criminal Law, Attempt, § 224 (12th Ed.).'
 "The 'preparation' for commission of an offense consists in devising or arranging the means or measures necessary for commission of the crime, while an 'attempt' or 'overt act' is a direct movement toward the commission, after the preparations are made. State v. Quick, 199 S.C. 256, 19 S.E.2d 101, 102, 103.
". . . .
 " 'Mere solicitation, unaccompanied by an act moving directly toward commission of [an] intended crime, is not an "overt act" constituting [an] element of [the] crime of attempt.' State v. Davis, 319 Mo. 1222, 6 S.W.2d 609.
 " 'An "overt act," as an element in an attempt to commit a crime, must be something done that directly moves towards the crime, and brings the accused nearer to its commission than mere acts or preparation of or planning and will apparently result, in the usual and natural course of events if not hindered.' State v. Thomason, 23 Okla. Cr. 104, 212 P. 1026, 1027." (Emphasis added.)
In Ex parte James, 468 So.2d 889 (Ala. 1984), the Alabama Supreme Court found the words muttered by the appellant were not sufficient to sustain his conviction for attempted theft. The appellant in James approached the store manager in the WinnDixie store on the evening of the alleged crime. The appellant pointed to another individual in the store. He told the manager that the other individual had a gun. The appellant instructed the manager to do as his companion instructed and "not start no shit." James at 890. The appellant and the unknown companion both left the store without threatening anyone or without trying to steal the company's property.
Section 13A-4-1 is based on the New York and Michigan versions of criminal solicitation. Section 13A-4-1(c) is based on *Page 769 
a New York statute to the same effect. N.Y. Penal Law § 100.20 (McKinney 1987).
In People v. Spencer, 66 Misc.2d 658, 322 N.Y.S.2d 266
(1971), the New York court addressed a similar issue as the one before this court: "whether a verbal solicitation to commit a crime constitutes an attempt to commit the crime." Spencer322 N YS.2d at 267. In Spencer, the court noted that the majority of American jurisdictions hold that "mere criminal solicitation of another to commit a crime does not constitute an attempt."Spencer at 269, quoting Gervin v. State, 212 Tenn. 653, 656-57,371 S.W.2d 449, 450-51 (1963).
In Spencer, the appellant drove alongside a child who was walking down the street. He tried to convince the child to perform sodomy on him, but the evidence failed to support a finding that the appellant took any further steps to that end. Based on this evidence, the court found the request by the appellant to be a criminal solicitation but not an attempt.
Our review of the evidence in the cause sub judice leads us to conclude that the appellant's request to buy two dilaudid pills amounted to criminal solicitation and not an attempt. While it is true that the appellant circled the block, this fact does not change our conclusion. His acts were not enough to rise to the level of the required overt act to constitute an attempt.
Section 13A-4-1(c) was thus not a bar to his prosecution for criminal solicitation.
 III
The appellant further contends that his motion for judgment of acquittal should have been granted because the testimony of Jackson was uncorroborated.
Section 13A-4-1(a), para. 2, Code of Alabama 1975, provides:
 "A person may not be convicted of criminal solicitation upon the uncorroborated testimony of the person allegedly solicited, and there must be proof of circumstances corroborating both the solicitation and the defendant's intent."
As to this point, the commentary reads:
 "Since solicitation makes criminal a communication that is likely to be within the peculiar knowledge of only several persons, more evidence is required than just the testimony of the person allegedly solicited, and there must be circumstances corroborative of both the making of the solicitation and that its making was in earnest."
Ala. Code § 13A-4-1 Commentary (1975).
To prove solicitation, the statute requires corroboration of both the communication (or the act of solicitation) and the intent to influence the solicitor to commit a crime.Kimbrough, 544 So.2d at 179. The corroborating testimony, however, does not need to be direct testimony that the accused did the specified acts. Rather, it is sufficient if the "corroborative evidence . . . tend[s] to link the accused withthe offense." Kimbrough (emphasis in original). See also Millerv. State, 290 Ala. 248, 275 So.2d 675 (1973); Scott v. State,460 So.2d 1364 (Ala.Cr.App. 1983), rev'd on other grounds,460 So.2d 1371 (Ala. 1984).
Other than the testimony of Jackson, the State offered a video tape and an audio tape which revealed the substance of the communication between the appellant (the solicitor) and Jackson (the solicitee). Furthermore, Officer Thorn testified that he was located about one-half block away. He saw the appellant and Jackson conversing. He also heard their conversation, since a receiving and recording device was in the surveillance van where Thorn was located.
Officer Leigh also testified. He stated that he stopped the appellant at the corner of 4th Avenue and 2nd Street as the appellant was circling the block in his car.
We hold that this testimony sufficiently corroborated the testimony of the solicitee, Jackson.
 IV
The appellant next alleges that his motion for a new trial should have been granted because the trial court erred in allowing Officer Thorn to testify that dilaudid is a controlled substance.
While Officer Thorn was on the stand, the following line of questioning occurred: *Page 770 
 "Q Are you familiar with a controlled substance by the name of Dilaudid?
"A Yes, ma'am, I am.
"Q Would you tell the jury what Dilaudid is?
 "MR. NAIL: We object, no qualifications, predicate — "THE COURT: Overruled. We will have you give us a little predicate, I guess.
 "Q Have you had any special training in controlled substances?
"A Yes, ma'am.
 "Q Have you become familiar with the term 'Dilaudid?'
"A Yes, ma'am.
 "Q Would you tell the jury what the term 'Dilaudid' is?
 "MR. NAIL: Since she asked it again, I am going to object again and assign as grounds that no proper predicate for qualifications for this man to testify.
 "THE COURT: Overruled. Subject to cross-examination, overruled.
 "THE WITNESS: Dilaudid is a semi-synthetic narcotic or analgesic used as a pain killer. Schedule II narcotics which has —
 "MR. NAIL: See, I am going to object to all of that, Judge, he is not a chemist, he is not a doctor. He is testifying to things obviously somebody has told him, I guess, but he is not qualified to make that determination.
"THE COURT: Overruled.
"Q Continue.
 "A It is a pain killer which is used in the medical profession primarily for severe pain, as recovering from surgery —
 "MR. NAIL: We object to the term 'severe pain.' He is just not qualified.
"THE COURT: Let's go to another question.
"Q Are you familiar with the drug itself?
"A Yes, ma'am.
"Q Have you seen it?
 "A Yes, ma'am. "Q Would you tell the jury, please, how it appears?
 "A It comes in four dosage units, tablet form, from one to four milligrams, each one has a 'K' on one side and a number 1, 2, 3 or 4 on the opposite side.
"Q Are these imprinted on the tablets themselves?
"A Yes, ma'am.
 "Q Is there a street name commonly associated with Dilaudid?
 "MR. NAIL: We would object to all of that, may it please the court.
"THE COURT: Overruled.
 "THE WITNESS: On the street it is known as K4's or 4's, because of the lettering and number and all —
 "MR. NAIL: We object to all of this mental operation, because of, supposition on his part.
"THE COURT: So noted, overruled.
"Q Are you familiar with these terms?
"A Yes, ma'am.
 "Q And have you used them — practiced with these terms and become familiar with them as part of your experience in narcotics?
 "MR. NAIL: Object to the leading nature of the question.
"THE COURT: Overruled.
"THE WITNESS: Yes, ma'am I have." (R. 61-65.)
The appellant contends that Thorn was not qualified to testify as an expert about dilaudid. He also argues that the State should have called someone more qualified to testify as to the nature of dilaudid.
This is not a normal case where a police officer's testimony is sought to substantiate that a substance taken from an accused is a controlled substance. In the present case, no drugs were taken from the appellant's person nor were any drugs used in a sale to this appellant. Instead, Thorn's testimony was used to explain that dilaudid is a controlled substance, commonly prescribed by doctors for pain, and that it is commonly known on the street as "fours" or "K4's."
The standards for experts have been applied in a number of cases in this State where the challenged witness is a police officer who seeks to testify about drugs. *Page 771 
In one such case, the Court of Civil Appeals, quoting this court, stated:
 "In Jenkins v. State, 46 Ala. App. 719, 248 So.2d 758 (Ala.Cr.App. 1971), a possession of marijuana case, it was stated:
". . . .
 " 'A witness is not qualified as an expert unless there is proof or a stipulation that he is familiar with the subject upon which he is asked to give an opinion. The qualification may come from study, practice, experience or observation of a given subject. The predicate is addressed to sound judicial discretion so as to lead to the conclusion that the witness knows more than an ordinary witness about the field. See Ala. Digest, Criminal Law Key 478.'
"Those rules here apply.
 "As to whether a particular witness is allowed to testify as an expert is largely a matter for the exercise of the judicial discretion of the trial court, whose decision in that regard will not be reversed upon appeal unless it was palpably wrong. C. Gamble, McElroy's Alabama Evidence, § 127.01(5) (3d ed. 1977)."
Tucker v. State, 445 So.2d 311, 313-14 (Ala.Civ.App. 1984) (civil condemnation case). Our court, likewise, has addressed this issue on a number of occasions. See, e.g., Donahoo v.State, 552 So.2d 887, 896-97 (Ala.Cr.App. 1989) (a police officer who has seen or studied may testify to age and value of marijuana plants); Garrett v. State, 504 So.2d 319, 323-24
(Ala.Cr.App. 1986), cert. denied (Ala. 1987) (a police officer who works in narcotics may identify a leafy substance as marijuana); Sexton v. State, 346 So.2d 1177, 1180
(Ala.Cr.App.), cert. denied, 346 So.2d 1180 (Ala. 1977) (a police officer who commonly works undercover may define "slang words" used by drug users and dealers); Nesbitt v. State,55 Ala. App. 534, 536, 317 So.2d 501, 503, cert. denied, 294 Ala. 766, 317 So.2d 504 (1975) (narcotics officer may testify about street jargon and terminology).
It is clear that a police officer who commonly handles narcotics cases is better qualified as to the nature of drugs than the average factfinder (i.e., juror). See W. Schroeder,Schroeder, Hoffman and Thigpen on Alabama Evidence § 7-2 at 75 (Supp. 1989) ("[i]f a proffered expert is better qualified that [sic] the factfinder, his testimony should not be excluded merely because others may be even better qualified").
The trial judge's allowance of Thorn's testimony regarding dilaudid in this case is not an abuse of discretion. Officer Thorn stated that, in his years as a police officer, he had dealt with dilaudid. This fact alone makes him more qualified than the average factfinder.
 V
Next, the appellant avers that the prosecutor, during closing arguments, made two comments which so prejudiced him that he was denied a fair trial.
First, the appellant argues that the prosecutor made an improper reference to his failure to testify. We find no merit to this contention.
The portion of the transcript which the appellant included in his brief (R. 220) reveals that the prosecutor made reference to the witnesses who did testify. The prosecutor merely stated that all of the witnesses spoke the truth, and the defendant's witnesses (his mother and girlfriend) could not possibly have known what happened, since they were not present at the time of the solicitation. See Thompson v. State, 527 So.2d 777
(Ala.Cr.App. 1988).
Second, the appellant alleges that the prosecutor made reference to other crimes with which this appellant could have been charged. Thus, the appellant argues that his motion for mistrial should have been granted.
The relevant portion of the closing argument is as follows:
 "MS. PAUL: It doesn't matter what the offense is, it can be soliciting to distribute a controlled substance, it could be trafficking in cocaine, the point —
 "MR. NAIL: Judge, I am going to object to that, it is improper argument. He is not charged with those offenses. It is an *Page 772 
effort to prejudice this man and we object and ask for a mistrial.
 "THE COURT: Overruled. If we could move along, though, to the evidence in the case, it would be wise.
"MS. PAUL: I will, Judge." (R. 226-27.)
This court addressed a similar issue in Soriano v. State,527 So.2d 1367, 1371 (Ala.Cr.App. 1988). In Soriano, we stated:
 "A declaration of a mistrial indicates a miscarriage of justice and is granted only where it is clearly manifest that justice cannot be insured. Chesson v. State, 435 So.2d 177, 181
(Ala.Cr.App. 1983); Long v. State, 370 So.2d 354
(Ala.Cr.App. 1979).
". . . .
 " 'The entry of a mistrial is not lightly to be undertaken. It should be only a last resort, as in cases of otherwise ineradicable prejudice. Where error is eradicable a mistrial is too drastic and is properly denied.' Woods v. State, 460 So.2d 291, 296 (Ala.Cr.App. 1984); Chillous v. State, 405 So.2d 58 (Ala.Cr.App. 1981).
 " 'When prejudicial remarks have been made, the trial judge is in a better position than the appellate court to determine whether the remarks were so prejudicial as to be ineradicable.' Chambers v. State, 382 So.2d 632, 635
(Ala.Cr.App.), cert. denied, 382 So.2d 636 (Ala. 1980)."
From the portion of transcript which is before this court, we cannot determine the "point" that the prosecutor sought to make by referring to other crimes. Nonetheless, we find no miscarriage of justice.
Thus, the trial judge's refusal to grant a mistrial was not error.
 VI
The appellant contends that the trial judge committed reversible error by refusing to give certain of his requested jury charges, specifically, numbers 1 through 14 and 21. (R. 329-35, 343.)
 A
The appellant's requested jury charges one through four pertained to solicitation. They were designed to define the terms "solicits, requests, commands [and] importunes," as found in § 13A-4-1(a), para. 1, Code of Alabama 1975.
In Gross v. State, 485 So.2d 403 (Ala.Cr.App. 1986), we addressed the failure of the trial judge to define the term "custody," where the defendant therein was charged with escape. In Gross, we noted that "custody" was an element of escape and was defined by our criminal code. See Ala. Code §13A-10-30(b)(1) (1975). Because of this failure, we reversed Gross's conviction. Gross at 404. See also Ainsworth v. State,465 So.2d 467 (Ala.Cr.App. 1984), cert. denied (1985) (failure to include statutory definition of "deprive" constituted reversible error).
The cause sub judice, however, is distinguishable. "Solicitation" is defined in § 13A-4-1(a), Code of Alabama 1975, and is an element of the crime of criminal solicitation of a controlled substance at § 13A-12-202, Code of Alabama 1975 (Supp. 1989). The terms "solicits, requests, commands [and] importunes" are not defined in our code.
The trial judge, in his charge to the jury, explained that the appellant could be found guilty of the crime with which he was charged if they (the jury) found that the appellant "requested" or "solicited" Jackson to sell him (the appellant) some dilaudid. The trial judge made clear that the act of selling drugs did not have to be "consummated" or "completed" for the appellant to be found guilty of solicitation.
On these facts, it was not necessary that the trial judge further define "solicit" or "request" or the other words used in the explanation of solicitation. If we required otherwise, a jury charge could potentially continue ad infinitum; for every term in a jury charge could become the subject of attack.
Our holding has added meaning when the challenged terms can be understood by the average juror in their common usage.See Russello v. United States, 464 U.S. 16, 104 S.Ct. 296,78 L.Ed.2d 17 (1983); 73 Am.Jur.2d Statutes §§ 195, 204, and 206 (1974). The words "request" and "solicit" could in *Page 773 
this cause be given their common meaning. Therefore, in light of the jury charge, taken as a whole, and the facts of this case, we find no error. See Carroll v. State, 407 So.2d 177,179 (Ala. 1981) ("it is the charge in its totality and not some 'magic words' that must determine whether the defendant's rights have been protected or error committed").
The trial judge's refusal to further define solicitation as requested by this appellant was not error.
 B
Requested jury charge number five states:
 "I charge you that if you find from the evidence that there was a voluntary and complete renunciation of any criminal intent on the part of the defendant you must find the defendant not guilty." (R. 330.)
The trial judge specifically noted that he did not charge on renunciation, "because [he] didn't think there was any evidence of renunciation." (R. 242.) The facts clearly reveal, contrary to the appellant's contention, that Jackson and the appellant agreed to consummate the deal. The appellant was to circle the block and meet Jackson a few feet from where they were standing at the time. The appellant was stopped by a marked patrol unit at the same corner where they first met and spoke.
The trial judge's refusal to instruct on renunciation was not erroneous. See Coon v. State, 494 So.2d 184, 186 (Ala.Cr.App. 1986).
 C
The appellant's requested jury charges 6 through 14 deal with corroboration testimony. The appellant claims that the trial judge should have instructed the jury on these requested charges.
The trial judge explained to the jury in his charge that one of the dangers of the crime of solicitation is that it is often based on the communication with the solicitee. The judge informed the jury that they must base there verdict on something more than Jackson's testimony. In this regard, the judge stated: "And there must be evidence corroborative of the making of the solicitation and that its making was in earnest." (R. 238.) Immediately thereafter, he defined "corroborative evidence." (R. 238.)
Therefore, the jury charge given by the trial judge "substantially and fairly" covered the same general rules of law as requested by this appellant. Ala. Code § 12-16-13 (1975);Perryman v. State, 558 So.2d 972 (1989). See also Lambeth v.State, 380 So.2d 923, 924-25 (Ala. 1979); Dillard v. State,371 So.2d 947, 948 (Ala. 1979); Bogan v. State, 529 So.2d 1029,1031-32 (Ala.Cr.App. 1988); Harris v. State, 513 So.2d 79,82-83 (Ala.Cr.App. 1987).
Therefore, the trial judge's refusal to give the appellant's requested jury charges 6 through 14 was not error.
 D
The appellant also claims that his requested jury charge 21 should have been presented to the jury. That charge reads:
 "The Court charges the jury that if after considering all the evidence in the case, that tending to show guilt together with the tendency to show innocence, there should spring up involuntarily in your mind from any part of the evidence a probability of the innocence of the Defendant, you should not convict the Defendant." (R. 343.)
The trial judge correctly explained reasonable doubt and the presumption of innocence to the jury. No more is required in this regard. Lambeth, 380 So.2d at 924-25.
His refusal to give the above quoted charge was not error.
 VII
The conversation between the appellant and Jackson on October 25, 1988, was recorded. Jackson had hidden on his person a transmitting device (or a microphone). The receiving device (or tape recorder) was located in a surveillance van *Page 774 
which was parked about one-half block away.
The State sought to admit the tape at trial. Because the recording contained so much background noise, the State prepared a transcript of the taped conversation. Over the appellant's objection, both the tape and the transcript were admitted at trial.
The appellant cites this court to the case which answers his query. Dawkins v. State, 455 So.2d 220 (Ala.Cr.App.), cert.denied (Ala. 1984). In Dawkins, we held that a tape recording and a transcript prepared from that recording were both properly admitted into evidence, even though the tape recording itself was partially inaudible.
The case at bar is controlled by Dawkins. Thus, admission of the tape and of the transcript was not error.
 VIII
This appellant was sentenced to a term of life imprisonment, in accord with the Alabama Habitual Felony Offender Act. Ala. Code § 13A-5-9 (1975).
Section 13A-12-202(c), Code of Alabama 1975 (Supp. 1989), states:
 "Criminal solicitation to commit a controlled substance crime shall be punished the same as the controlled substance crime solicited."
The appellant was indicted for unlawfully soliciting "James Jackson to sell, furnish, give away, manufacture, deliver or distribute a controlled substance." (R. 284.) This crime is unlawful distribution of a controlled substance and is found at § 13A-12-211, Code of Alabama 1975 (Supp. 1989). Unlawful distribution is a class B felony.
The State presented evidence at the sentencing hearing that the appellant had committed three prior felonies. Therefore, the appellant was sentenced to life imprisonment as required by § 13A-5-9(c)(2).
The appellant argues that the facts which led to his prior felonies were minor. Therefore, he claims that his punishment was unduly harsh and in violation of the Eighth Amendment of the United States Constitution.
Two of the appellant's prior felonies were for felony possession of marijuana. He was convicted for one in 1977 and the other in 1987. His third conviction was for possession of a counterfeited obligation of the United States, for which he was convicted in federal court in 1977.
The appellant testified at the sentencing hearing that in 1977 he was found to be in possession of one $20 counterfeit bill. Regarding his 1977 marijuana conviction, he stated that he only had a few marijuana cigarettes (joints) on his person at the time of his arrest. Regarding his 1987 marijuana conviction, he stated that he only had two joints on him at the time of his arrest.
Application of the Habitual Felony Offender Act is mandatory where the convicted felon is a repeat offender. A trial judge has no discretion in its application or in consideration of mitigating facts and circumstances. Reynolds v. State,488 So.2d 4 (Ala.Cr.App. 1985); Hughes v. State, 443 So.2d 1382
(Ala.Cr.App. 1983). Application of the statute to a habitual felony offender does not constitute cruel and unusual punishment. Smith v. State, 529 So.2d 1022 (Ala.Cr.App. 1987),cert. denied (Ala. 1988); Johnson v. State, 515 So.2d 132
(Ala.Cr.App. 1987); Thompson v. State, 462 So.2d 777
(Ala.Cr.App. 1984), cert. denied (Ala. 1985); Jemison v. State,439 So.2d 786 (Ala.Cr.App.), cert. denied (Ala. 1983).
However, prior felonies used for enhancement purposes must be substantiated in accordance with § 13A-5-9 and Rule 6(b)(3), A.R.Crim.P.
Rule 6(b)(3)(iv) requires:
 "Any conviction in any jurisdiction, including Alabama, shall be considered and determined to be a felony conviction if the conduct made the basis of the conviction constitutes a felony under Act 607, § 130(4), Acts of Alabama 1977, p. 812 (§ 13A-1-2(4), Alabama Criminal Code), or would have constituted a felony under that section had the conduct taken place in Alabama on or after January 1, 1980."
See Beck v. State, 553 So.2d 133 (Ala.Cr.App. 1989).
While this specific issue was not raised at the trial level, we are required to review *Page 775 
all challenges to the Habitual Felony Offender Act which are "clearly illegal" or "clearly not authorized." Ex parteBrannon, 547 So.2d 68 (Ala. 1989); see generally Ex parteChambers, 522 So.2d 313 (Ala. 1987). See also Gibson v. State,555 So.2d 784, 798-99 (Ala.Cr.App. 1989), cert. denied (Ala. 1990); Seritt v. State, 401 So.2d 248, 250 (Ala.Cr.App.), cert.denied, 401 So.2d 251 (Ala. 1981).
Our review of the sentencing hearing transcript reveals that the felony counterfeiting charge from federal court was not properly applied for purposes of the Habitual Felony Offender Act. Our criminal code does not contain a counterpart, whereby the appellant could have been convicted of felony possession of a counterfeit $20 bill under Alabama law.
Thus, application of this prior felony for enhancement purposes was error. The appellant is due to be resentenced without consideration of the felony counterfeiting charge.
For the reasons stated, the decision of the trial court is hereby affirmed but is remanded, with directions to the trial court to conduct a new sentencing hearing.
AFFIRMED BUT REMANDED WITH DIRECTIONS FOR RESENTENCING HEARING.
All the Judges concur.