# McNeill v. The State.

*Indictment for Murder.*

1.  *General charge of the court; how considered* —A general charge by the court, *ex mero motu*, must be considered as an entirety, in connection with the evidence of the particular case, and if, when so considered, it correctly states the law, it furnishes no ground for a re-

| | |
|---|---|
| 102 | 121 |
| 102 | 35 |
| 102 | 121 |
| 107 | 21 |
| 102 | 121 |
| 122 | 73 |
| 102 | 121 |
| 125 | 29 |
| 102 | 121 |
| 130 | 112 |
| 102 | 121 |
| 136 | 130 |
| 137 | 21 |
| 102 | 121 |
| 139 | 66 |
| 102 | 121 |
| 138 | 38 |

[McNeill v. The State.]

versal of the judgment, though a single clause, if considered alone, may be erroneous.

2. *Adultery of wife; when homicide reduced to manslaughter.*—If a man discovers his wife in the act of adultery, and, provoked by the wrong done him and swayed by the passion naturally engendered, he immediately kills her, he is guilty of manslaughter only; but if he does not kill her until after there has been time for his passion to cool and for reason to reassert itself, or if he kills immediately, not being moved thereto by the heat of passion, but by prior malice, hatred, a desire to avenge the wrong done him, or by any other motive or design, except such as is presently engendered by the rage caused by such provocation, he is guilty of murder.

3. *Same; murder if there has been cooling time.*—If, after a man discovers his wife in the act of adultery, he waits a sufficient time for his passion aroused by such provocation to cool, before he kills her, he is guilty of murder, although his rage, in fact continued and caused him to strike the fatal blow.

4. *Charge to the jury; based upon one phase of the evidence.*—A charge to the jury that assumes as true one phase of the evidence, to the exclusion of other tendencies of the evidence, is erroneous and properly refused.

5. *Same; wife's virtue.*—In the prosecution of a husband for killing his wife, a charge that instructs the jury "that they may take into consideration, if proved, the want of virtue of the deceased, in determining whether the defendant is guilty of murder in either degree," is erroneous; as authorizing a wrong criterion for the determination of defendant's guilt of murder.

6. *Argument of counsel to jury.*—In an argument to the jury in a criminal case, counsel should not be restricted by a narrow and rigid rule; and the statement by a prosecuting attorney in his argument to the jury, during the prosecution for murder, that they should not sentence defendant to imprisonment, because he might be pardoned, but he should be hung, does not go beyond the limits of legitimate argument, and is not objectionable

APPEAL from the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

The appellant was indicted and tried for the murder of his wife, Catherine McNeill, and was convicted of murder in the first degree, and sentenced to be hanged.

The evidence for the State, as shown by the bill of exceptions, tended to show, that on the morning of September 3d, 1893, Catherine McNeill, the wife of defendant, was found dead in her bed in Mobile county, with a wound made by an axe on the right side of her head just above the right ear; and that an axe was found on the bed near her body. The evidence further tended to show

that the deceased went to bed about 11 o'clock on the night of the 2d of September, 1893; that there were sleeping in the same room with the deceased, but in a different bed, the niece and nephew of deceased, 14 and 12 years of age, respectively; that deceased took noth-ing to her room with her when she went to her room that night, except her baby and hat; that sometime before day, the niece awoke, and saw the defendant leav-ing the room hastily, and heard him run down the stairs leading from the room; that the niece immediately went back to sleep, and heard or saw nothing more until she was awakened in the morning. It was further shown by the evidence for the State, that the deceased was washing for one Marvary, who had married defendant's sister, and that on the evening before the killing, said Marvary and his wife came to the premises of deceased, and Marvary's wife asked deceased for one of Marvary's shirts, which had been left with her; that the deceased refused to give it to her, and a quarrel ensued, and the police being called, Marvary and his wife left the premises; that after Marvary and his wife had gone some distance, they separated, his wife going home, and he going back to the room of deceased, where he knocked several times, and failing to get any response, he went away; that he met defendant a short distance from the house and had a conversation with him about some accusations made by defendant as to Marvary's relations with defendant's wife; that Marvary denied these accusations, and after cursing defendant, went on home, arriving about 12 o'clock, and spent the rest of the night at his home. It was also in evidence that defendant had told the Chief of Police and had stated on his preliminary trial, ''that he was at home on the evening on which the quarrel above referred to between Marvary and wife took place; that he started for Spring Hill shortly after Marvary and wife left the place. He proceeded a short distance, when he became suspicious and returned to the place where his wife was; that finding the door locked he suspected that some one was in his wife's room, and went out on a shed adjoining the gallery, and from that position discovered Marvary and his (defendant's) wife in the act of adultery; that he went to his wife's room door and waited until Marvary came out, when he accosted him; that after Marvary went off, he (defendant)

went into his wife's room and accused her of infidelity; that he was attacked by his wife with an axe, which had been previously concealed behind the bed; * * * that he took the axe from his wife, and in a moment of passion struck her once on the head, and she fell on the bed; that he then fled and remained in hiding a few days, and then surrendered himself at the county jail." There was also introduced by the State two witnesses, whose testimony tended to show that they passed up the steps leading to the room occupied by deceased and along the door of the room the night she was killed, at different times between the hours of 1 and 4 o'clock, and they did not see any one at the door.

The evidence on the part of the defendant was substantially the same as what he told the chief of police, which is copied above. The defendant also introduced a number of witnesses, who testified that the general reputation of the defendant for peace and quiet was good.

The court, as a part of the general charge to the jury, instructed them in writing as follows: "As mitigation in this case the defendant claims that the defendant had discovered his wife in the act of adultery, at or shortly before the time of the killing. The law is, that if a man discovers his wife in the act of adultery, and his passion was greatly aroused, and through this passion he strikes and kills his wife, it would not be murder, but manslaughter. *The law does not say, that under all circumstances a man is not guilty of murder if he kill his wife, even if in the act of adultery at the time of the killing. The test is, does the slayer slay by reason of passion aroused or induced by revenge or malice. If a wife has lost her virtue, and continues to defile her marriage bed, and the husband knows this, and after so knowing and after reflection, while the mind is coolly operating, kills her to avenge his wounded honor, and not by reason of passion, it would be murder, not manslaughter.* Therefore, in the case at bar, gentlemen of the jury, if you should find from the evidence, that the defendant caught her in the act, and through the influence of passion shortly thereafter killed her, this would be manslaughter; but *if you should find that the defendant caught his wife in the act of adultery, and before the killing there was sufficient cooling time, and a man kills his*

*wife through hatred and revenge, this would be murder and*
*not manslaughter."*

The defendant separately excepted to the giving of
each portion of the general charge italicized at the time
each such portion was given; and also separately excepted
to the court's refusal to give the following written charges
requested by him: (1.) "The court charges the jury, that
if from the evidence they can not tell who provoked the
difficulty, that it is their duty to give the defendant the
benefit of the doubt, no matter how slight its weight."
(2.) "The court charges the jury, that they may take
into consideration, if proved, the want of virtue of the
deceased, in determining whether the defendant is guilty
of murder in either degree." (3.) "If the jury believe
from the evidence, that there was a motive which prompt-
ed the defendant to kill his wife, it is their duty to ac-
certain what that motive was, and if the evidence tends
to show that the motive that prompted the killing was
the infidelity or adultery of the wife on the night of
the killing, and that the killing was the result of
passion, they ought not to find the defendant guilty
of any offense beyond manslaughter in the first degree."
(4.) "If the jury believe from the evidence, that there
was a motive which prompted the defendant to kill his
wife, it is their duty to accertain what that motive was,
and if the evidence tends to show that the motive which
prompted the killing was passion engendered by the in-
fidelity or adultery of his wife, they ought not to find
the defendant guilty of any offense beyond manslaughter
in the first degree."

The bill of exceptions contains the following recital:
"The solicitor for the State said to the jury in his argu-
ment: 'I submit, you ought not to sentence this man to
imprisonment, because there might be a pardon granted
through the influence of his friends exerted in his be-
half; that a petition might be circulated and the signa-
tures of many good and influential citizens obtained,
who sign without looking at the petition, or who are too
tender hearted to refuse to sign; even you, gentlemen
of the jury, may be importuned to sign such a petition.
You should sentence him to be hung, and run no such
risk.'" To this portion of the solicitor's argument the
defendant objected; the court overruled the objection,
and defendant duly excepted.

SAMUEL B. BROWN & HENRY TONSMEIRE, for appellant, cited *Mitchell v. The State*, 60 Ala. 31; *People v. Kahler*, 53 N. W. Rep. 926; *Childress v. The State*, 86 Ala. 87; *Wolffe v. Minnis*, 74 Ala. 389; *E. T. V. & Ga. R. R. Co. v. Carloss*, 77 Ala. 447; *Cross v. The State*, 68 Ala. 484.

WM. L. MARTIN, Attorney-General, *contra*.

McCLELLAN, J.—The general charge of a trial court given *ex mero motu* with reference to any point is to be considered as an entirety, and in connection with the evidence ; and it "should be read and construed with regard to the connection between its several sentences and propositions, each declaration being shaded and interpreted in the light of the context ; and if any part so considered, limited or expanded, asserts the law correctly, it will not furnish ground for reversal, however faulty the clause might be if its meaning were not controlled by prior or subsequent passages."—*Montgomery & Eufaula R. R. Co. v. Stewart*, 91 Ala. 421, 427; *Williams v. State*, 83 Ala. 68; *O'Donnell v. Rodiger*, 76 Ala. 222; *L. & N. R. R. Co. v. Orr*, 94 Ala. 602.

Considered in this way—and probably even without reference to the principle just stated—that part of the court's general charge to which exceptions were reserved asserts no more than this : that if a man find his wife in the act of adultery, and, provoked by the wrong done him and moved by the passion naturally engendered, he immediately kills her, he is not guilty of murder, but of manslaughter only, but that, on the other hand, if he does not strike and kill until after there has been time for his passion to cool and for reason to reassert itself, or if he strikes and kills immediately, but is not moved thereto by the heat of passion but by prior malice, hatred, a desire to avenge the wrong done him, or by any other motive or upon any design whatever except such as is presently engendered by the paroxysm of rage into which he is thrown by this extreme provocation, he is guilty of murder. And this beyond all doubt is the law.—2 Bishop Cr. Law, § 708; Wharton on Hom., §§ 407–412; 9 Am. & Eng. Encyc. of Law, pp. 578, *et seq*.

Charge 1 requested by the defendant is bad in that it assumes there was a *difficulty* at the time of the mortal

[McNeill v. The State.]

blow between the defendant and deceased, when the evidence for the State tends to show that the deceased was striken while she slept.

Charge 2 requested for the defendant is palpably vicious in that its direct tendency was to have the jury find the defendant guilty of murder or not as they should find the deceased to have been a virtuous or lewd woman.

Charges 3 and 4 were properly refused to defendant for that they pretermit all inquiry as to whether there had been time for defendant's passion to cool after he caught his wife in the act of adultery, if indeed he did see her in the act of adultery, and prior to inflicting the mortal blow upon her. If there had been such time it is wholly immaterial whether the passion aroused by the act of adultery had cooled or not, for though the paroxysm of anger and rage in fact continued and moved the defendant to the fatal blow after the lapse of sufficient cooling time, yet would he still be guilty of murder. These instructions, moreover, are, to say the least, confused, self-repugnant and misleading in that they assume there may be a *motive* for an act which is superinduced by and done in the heat of passion. The absence of motive is essential to the ascription of the act to unreasoning fury, and where there is motive the killing is murder and not manslaughter.

The court committed no error in its action with reference to that part of the solicitor's argument to which objection was made. No fact was stated by him, but to the contary all he said was but the expression of his opinion or anticipation as to what would be the result of committing the defendant to the penitentiary for life instead of inflicting the death penalty—an argument for the death penalty proceding on considerations the reasonableness of which was as much open to the jury as to counsel, and nothing said was beyond the limitations put upon the remarks of counsel to the jury by repeated decisions of this court.—*Cross v. State*, 68 Ala. 476 ; *E. T. Va. & Ga. R. R. Co. v. Bayliss*, 75 Ala. 466 ; *Wolffe v. Minnis*, 74 Ala. 386 ; *Noble & Ware v. Mitchell*, 100 Ala. 521 ; *B. M. R. R. Co. v. Harris*, 98 Ala. 326.

The judgment of the city court must be affirmed ; and the time originally fixed for the execution of the sentence of death imposed thereby having passed, it is here ordered and adjudged that the sheriff of Mobile county

will, on Friday, the 18th day of May, 1894, proceed to execute said sentence in the manner prescribed by law.
Affirmed.