908 So.2d 1024 (2004)
Ex parte Dennis McGRIFF.
(In re Dennis Demetrius McGriff v. State of Alabama).
1010469.
Supreme Court of Alabama.
December 17, 2004.
Opinion Overruling Rehearing January 14, 2005.
*1026 William C. Maddox, Dothan, for petitioner.
William H. Pryor, Jr., and Troy King, attys. gen., and A. Vernon Barnett IV and Anne C. Adams, asst. attys. gen., for respondent.
Bryan A. Stevenson and Cathleen Price, Montgomery, for amicus curiae Equal Justice Initiative of Alabama, in support of the petitioner.
JOHNSTONE, Justice.
Dennis Demetrius McGriff was indicted, tried, and convicted for capital murder committed by shooting from a vehicle in violation of § 13A-5-40(18), Ala.Code 1975. In the penalty phase of McGriff's trial, the prosecutor undertook to prove the aggravating circumstance defined by § 13A-5-49(3), Ala.Code 1975, that McGriff had "knowingly created a great risk of death to many persons." By a vote of ten to two, the jury subsequently recommended the death penalty. The trial court followed the jury recommendation and sentenced McGriff to death. McGriff appealed to the Court of Criminal Appeals, which affirmed his conviction and death sentence. McGriff v. State, 908 So.2d 961 (Ala.Crim. App.2000). McGriff petitioned this Court for a writ of certiorari. We granted the writ to address, among other issues, the trial court's instructions on provoked heat of passion. We reverse and remand for a new trial. In response to Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), we also provide some guidance for the new trial.

Facts
According to McGriff, Michael McCree and others accompanying McCree tried to injure or to kill McGriff and his companion by throwing a firebomb at them and pursuing them in a high speed car chase, on October 22, 1996. A disputed period of time thereafter on the same day, McGriff rode as a passenger in a car driven slowly by an abandoned club and its parking lot, where McCree mingled with 30 or 40 others near the car McCree and his companions had used in the preceding chase. McGriff fired one "warning shot" into the air and then two shots in rapid succession toward the people in the parking lot by some accounts, or toward the car used by McCree and his companions in the earlier chase by McGriff's own account. One of the shots hit and killed McCree. In a statement to the police, while McGriff did not deny that he had fired the shot which killed McCree, McGriff insisted that he had not intended to kill McCree or anyone else and claimed that he had wanted only to scare McCree and the others involved in the incident earlier that day.
*1027 Similarly, at trial McGriff did not dispute that he had killed McCree. Rather, a principal feature of McGriff's trial strategy was his effort to persuade the jury to find him not guilty of capital murder but guilty only of manslaughter because he had fired the shots in a heat of passion provoked by the assault initiated and perpetrated by the victim and his companions.
McGriff's statement to the police and the testimony of defense witness Fredrick Shaw support the following chronology. Jerry Thompson, Scat Walker, and the victim Michael McCree had made threats that they were going to rape Ebra Hayes, McGriff's girlfriend. McGriff and Shaw thought that Hayes was pregnant with McGriff's child. On the day of the killing, Shaw drove his car, with McGriff as a passenger, into the driveway of the house of their friend Boo Granger in Ashford. Hayes and Gabriel Knight, another friend of McGriff, were standing in the yard of Granger's house. Thompson, Walker, and McCree were standing nearby, behind Thompson's car on the side of the road. Hayes cried out that those three men were about to rob McGriff. Thompson, Walker, and McCree tried to enter the car occupied by Shaw and McGriff. The three were unable to enter because Shaw had locked the car doors. Shaw and McGriff rapidly backed out in the car to leave the scene. One of the three men, Thompson, Walker, or McCree, threw a firebomb at Shaw and McGriff. Thompson, Walker, and McCree quickly boarded Thompson's car and pursued Shaw and McGriff. The cars reached speeds of up to 90 miles an hour during the chase, with Thompson's car traveling "right on the tail end" of Shaw's car. (R. 706.) Thompson made at least one attempt to overtake Shaw and McGriff and to block Shaw's car. Shaw and McGriff were scared. Shaw feared that the three pursuing men had guns. When Thompson's car overheated, Shaw and McGriff were able to escape. Shaw and McGriff drove from Ashford to the house where Hayes lived in Webb. This Court takes judicial notice that Ashford and Webb are approximately eight and a half miles apart. See Vulcan Materials Co. v. Grace, 274 Ala. 653, 151 So.2d 229, 231 (1963)(taking judicial notice of distance between two towns). At the time Shaw and McGriff arrived at Hayes's house, about thirty minutes had passed since the affray outside Granger's house began. Two or three minutes after Shaw and McGriff arrived at Hayes's house, Hayes and Knight drove up. The four spent no more than ten minutes at Hayes's house before getting into Hayes's car to go back to Ashford. On the short drive back to Ashford, Shaw asked to be dropped off near his mother's house. Shaw testified that he heard the fatal gunshots no more than five minutes after he got out of Hayes's car in Ashford. The State presented countervailing evidence that tended to prove that the car chase ended by about 12:30 p.m. and that the shooting did not occur until about 5:15 or 5:20 p.m.
After the close of the evidence, at the charge conference before the trial judge's guilt phase charge to the jury, counsel for McGriff requested that the trial court instruct the jury on provoked heat of passion. "Judge, one of the charges that we would requestdo you have a standard charge on heat of passion? ... Do you have anything on what provocation" (R. 845, 847.) The prosecutor stated, "I think that would be proper wholeheartedly, Judge, if that's what they are saying the justification for the killing was, heat of passion." (R. 848.) Counsel for McGriff continued,
"The thing that I think that I would request the Court do is that heat of passionthat the jury be instructed that heat of passion is a defense to intent. *1028 That if they find that the Defendant acted under heat of passion, then you cannot find that it was an intentional act.
"....
"... We are saying that he didn't have the intent to kill him, but he did kill him. It was just an unintentional act. And, of course, capital murder requires that intent."
(R. 850-51.) The trial court initially noted that heat of passion "would apply in the difference between capital murder and intentional murder with provocation and/or manslaughter" (R. 851) and later acknowledged that heat of passion was "a big important part of the defense's case." (R. 973.) Nonetheless, the court omitted to instruct the jurors to consider heat of passion in their deliberations on the charge of capital murder. In brief to us, the State admits this omission.
The trial court first concluded its instructions to the jury on the elements of capital murder without mentioning provoked heat of passion:
"So the elements are that he caused thenumber one, that he caused the death of Mr. McGriff [sic]; number two, that he intended to kill him; and number three, that he did so by firing a deadly weapon from or within a motor vehicle. That would be capital murder."
(R. 949.) The court next explained that the jurors could consider the lesser included offenses and provoked heat of passion, but only after they had considered and rejected the charge of capital murder:
"Now, going to the lesser included charge of murder, if you were to find that the Defendant did not commit the crime of capital murder, as I have defined it to you, you would consider whether or not he committed the crime of murder.
". . . .
"Now, while we are on the lesser included offense of murder, I am going to define to you intentional murder with the provocation defense. There has been argument and evidence in regard to the Defendant committing thiscommitting a murder, but being provoked to do so under the law. So you need to listen very carefully to these elements, particularly the definition of provocation.
"A person commits the crime of murder if he causes the death of another person; and in performing the act or acts which caused the death of the person, he intended to kill that person or another person. A person does not commit murder, however, if he was moved to act by a sudden heat of passion caused by provocation recognized by law and before there had been a reasonable time for passion to cool and for reason to reassert itself.
"So let me read that statement again because it talks about heat of passion and provocation. A person does not commit murder, however, if he was moved to act by a sudden heat of passion caused by provocation recognized by law and before there was a reasonable time for the passion to cool and reason to reassert itself.
"Now, a person acts intentionally when it is his purpose to cause the death of another person.
"Now, I am going to turn to that terminology of lawful provocation because the provocation that you are to consider must be that recognized by the law in this definition I gave to you if you were to consider the heat of passion issue.
"Lawful provocation means that the Defendant was moved to do the act which caused the death of the deceased by a sudden heat of passion and before there had been a reasonable time for the *1029 passion to cool and reason to reassert itself. The Defendant must have been provoked at the time he did the act. That is, he must have been deprived of self-control by the provocation which he received.
"The state of mind must be such that the sudden excited passion suspends the exercise of judgment, but it is not required that the passion be so overpowering as to destroy his volition.
"A killing in sudden passion excited by sufficient lawful provocation is manslaughter only.
"In other words, if you found that the Defendant was not guilty of capital murder and were considering murder, but found that he was under theunder the control of heat of passion as I have defined it to you here today involving the unlawful provocation, then you would consider whether he was guilty of manslaughter. And if you were convinced that the heat of passion and lawful provocation was involved, as I have defined it to you, then your verdict would be manslaughter.
"....
"If you find that the State has failed to prove beyond a reasonable doubt any one of the elements of the offenses of murder, this is if you find that he was not guilty of capital murder, then you cannot find him guilty of murder."
(R. 950-56.)(Emphasis added.) The court further instructed the jurors:
"Now, in this definition of intentional murder with the provocation defense, I have mentioned that if you find that the Defendant was not guilty of capital murder and you were considering murder and you found that he was subject to the heat of passion and the legal provocation, as I have defined it to you, if you find that there was the heat of passion and legal provocation, then you would consider whether he was guilty of manslaughter or not."
(R. 958-59.)(Emphasis added.) After these instructions, the following colloquy occurred:
"DEFENSE COUNSEL: Would you instruct the jury that if they find that the murder was reckless or under heat of passion, that they cannot convict the Defendant of capital murder if they find that the murder was due to one of those things? I think that would clarify it a lot. In other words, you have got three types of murder. You have got intentional, you have got reckless, you have got the heat of provocation. If they find the murder was due to reckless acts or to heat of provocation, then they can't find him guilty of capital murder.
"PROSECUTOR: You said that.
"DEFENSE COUNSEL: I don't think you did.
"PROSECUTOR: Yeah. You charged and said
"DEFENSE COUNSEL: Well, you said it in a different way, but you really didn't spell it out like that.
"PROSECUTOR: You charged what capital murder was. You charged what regular murder was. You charged what manslaughter was. You said under manslaughter you couldn't put murder under heat of passion, it had to be manslaughter or provocation. So you covered those.
"THE COURT: I think what [defense counsel] is saying is I may not have said that if you find that murder was effected under heat of passionand I added the term legal provocation. I think they are confusing.
"DEFENSE COUNSEL: Right, or reckless.

*1030 "THE COURT: Then it couldn't be capital murder.
"DEFENSE COUNSEL: Capital murder.
"THE COURT: I will just give a little more detail because that is a big important part of the defense's case.
"DEFENSE COUNSEL: Right. Thank you, Judge."
(R. 971-73.) The court then instructed the jury as follows:
"Of course, I have been asked to reiterate theto a general degree this element of legal provocation and heat of passion. It must be an immediate fear of an assault and it must be before there has been an opportunity to cool off."
(R. 978.) Then counsel for McGriff again protested that the jury had not received the proper charge:
"DEFENSE COUNSEL: What aboutI'd asked you if you would instruct them that if they find the murder was due to a reckless act under heat of provocation, then they cannot convict him of capital murder.
"PROSECUTOR: You have already done that.
"THE COURT: I just did that.
"DEFENSE COUNSEL: Did you? Did you?
"THE COURT: Yeah. I did that.
"DEFENSE COUNSEL: Okay. All right. Thank you, Judge."
(R. 981.)
After the jurors began deliberating, they asked to be recharged on the elements of capital murder, murder, and manslaughter. The trial court recharged the jury in these words:
"Capital murder is murder committed by or through the use of a deadly weapon fired or otherwise used from a vehicle. So basically, capital murder in this case requires a murder using a deadly weapon fired from or within a motor vehicle. Now, so you have murder and the deadly weapon being fired from the motor vehicle.
"A person commits the crime of murder if, with the intent to cause the death of another person, he causes the death of that person or another person.
"So, in order for you to find the Defendant guilty of capital murder, you must find that Dennis Demetrius McGriff, the Defendant in this case, intended to cause the death of another person, Michael McCreeexcuse me, of another person, and that he did cause the death of either that person or of another person; and that he did so by using a deadly weapon fired or otherwise used within or from a vehicle. And in regard to some of the issues raised in this case, the death caused can be of the person intended or of another person.
"Now, concerning the lesser included offense of murder, non-capital murder, some of it incorporates some of the terminology of capital murder. But a person commits the crime of non-capital murder if, with the intent to cause the death of another person, he causes the death of that person or of another person. Or there is another way. That he commits the crime of murder if under circumstances manifesting extremely [sic] indifference to human life, he recklessly engages in conduct with creates a grave risk of death to another person other than himself and causes the death of another person. In other words, that's called reckless murder.
"Now, I mustI assume I need to go into the heat of passion and provocation issues that go along with manslaughter. Is that correct?"
*1031 (R. 996-98). The jury foreperson told the court that "[t]hat wasn't requested by anyone." (R. 998.) The court replied,
"Do you want to hear about heat of passion? Because if the heat of passion and legal provocation circumstance is found, then that would reduce or allow you to find him guilty of manslaughter instead of either of the two above. You can also find him guilty of manslaughter if you find a reckless murder, also.
"I will give just a general definition then of manslaughter. Manslaughter can be by a reckless killing where a person acts recklessly with respect to a result or circumstance which he is aware of and consciously disregards; and that circumstance being substantial and causing a substantial and unjustifiable risk that the result will occur or the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.
"And then, of course, the other type of manslaughter is a murder committed during the heat of passion with legal provocation."
(R. 998-1000.) The trial court concluded the instructions on this occasion by saying,
"[T]hose are the three charges available in this case: The initial charge of capital murder involving the murder where a firearm is used from within a vehicle; regular murder, which can be either reckless murder or just intentional murder of a non-capital type; or manslaughter which can be a reckless disregard of a known risk, as I have defined awhile aggravating, or heat of passion, legal provocation type murder. Those are the three levels."
(R. 1000-01.) Although McGriff's counsel had been misinformed by both the judge and the prosecutor that the application of provoked heat of passion to capital murder had already been covered, McGriff's counsel continued to press for an instruction on heat of passion as a mitigator for capital murder:
"DEFENSE COUNSEL: For a capital conviction, it has to be an intentional murder. If they decide that it's reckless murder or a murder under the heat of provocation, then it can't be capital.
"THE COURT: Right."
(R. 1002.) In response, the court gave the following charge, failing once again to conform to defense counsel's request for an instruction that a heat-of-passion "murder" cannot be capital murder:
"Ladies and gentlemen, to make sure, the capital offense requires an intentional murder, in other words, an intent to kill someone. It cannot be a reckless capital murder. It has to be with the intent to kill someone. If you find that the Defendant's conduct was not intentional, but only reckless, then you cannot find him guilty of capital murder. So capital is an intentional murder where a gun was fired from a vehicle. Non-capital murder is an intentional murder where it did not involve a gun fired from a vehicle; or a reckless murder, even though it was from a vehicle or not. And then, of course, the manslaughter would involve the degrees I have mentioned, about heat of passion with legal provocation or reckless disregard of an obvious risk of death to someone. So you have those three categories. But the differences between capital and non-capital is whether or not it was in a vehicle and whether or not it was intentional."
(R. 1008-09, emphasis added.) Once the jury went to the jury room to deliberate, the trial court asked whether both sides were satisfied with the supplemental *1032 charge. After the prosecutor indicated the State was satisfied, the following exchange occurred:
"DEFENSE COUNSEL: Judge, let me say this. And I know the Court is bending over backwards to be fair to us. My own personal opinion as an attorney, I do still feel that that [sic] the jury is notthat they don't understand that, in my opinion, thatI believe they believe as long as it was fired from or within a vehicle, it's capital murder.
"PROSECUTOR: Judge, that's not what the Indictment says.
"DEFENSE COUNSEL: That's my own personal opinion. That's my feeling.
"THE COURT: And what is that based on?
"DEFENSE COUNSEL: I think it's based on the way the statute reads. The statute does not have the word intent in it, the capital murder statute doesn't. It just has the word murder written in it.
"THE COURT: We have told them it has to have intent about ten different ways. So, if they haven't figured that out yet, they won't ever.
"DEFENSE COUNSEL: All right.
"THE COURT: Because I have harped over and over and over about there had to be the intent to kill. In fact, my words were to kill at least someone.
"DEFENSE COUNSEL: Right.
"THE COURT: I have said that at least five times to them. But, anyway, we will see if they have any other questions.
"DEFENSE COUNSEL: Thank you, Your Honor. Thank you very much."
(R. 1010-12.) The jurors asked no further questions, resumed their deliberations, and returned a verdict of guilty of capital murder as charged.

Issue and Standard of Review
McGriff contends that the trial court committed reversible error by failing to instruct the jury on the provoked heat-of-passion defense, or more properly the provoked heat-of-passion mitigator, as it would apply to capital murder as well as to the lesser included offense of noncapital murder. That is, McGriff contends that the trial court committed reversible error in failing to instruct the jury that provoked heat of passion, if not disproved beyond a reasonable doubt by the State, would mitigate capital murder as well as noncapital murder to manslaughter. The State concedes that "the trial court did not instruct the jury . . . that it could `consider heat of passion as a mitigator for capital murder.'" However, the State asserts that "any such charge by the trial court would have been an incorrect statement of law."
"`On certiorari review, this Court accords no presumption of correctness to the legal conclusions of the intermediate appellate court....' ... `[T]he ruling on a question of law carries no presumption of correctness, and this Court's review is de novo.'"
Ex parte C.L.C., 897 So.2d 234, 236-37 (Ala.2004)(internal citations omitted).

Law and Analysis
McGriff did not deny that, from a vehicle, he had fired the shot that killed McCree. McGriff's entire trial strategy was to persuade the jury to convict him of a lesser included offense instead of capital murder. One important alternative within this strategy was to persuade the jury that provoked heat of passion mitigated the killing to manslaughter.
"A person does not commit murder under subdivisions (a)(1) [intentional killing] *1033 or (a)(2) [indifferent reckless killing] of this section if he was moved to act by a sudden heat of passion caused by a provocation recognized by law, and before there had been a reasonable time for the passion to cool and for reason to reassert itself. The burden of injecting the issue of killing under legal provocation is on the defendant, but this does not shift the burden of proof. This subsection does not apply to a prosecution for, or preclude a conviction of, manslaughter or other crime."
Section 13A-6-2(b), Ala.Code 1975.
"A person commits the crime of manslaughter if ... [h]e causes the death of another person under circumstances that would constitute murder under Section 13A-6-2; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself."
Section 13A-6-3(a)(2), Ala.Code 1975. The capital offense defined by § 13A-5-40(18) and charged against McGriff was "[m]urder committed by or through the use of a deadly weapon fired or otherwise used within or from a vehicle." By this definition "murder," as defined by § 13A-5-40(b) and in turn by § 13A-6-2(a)(1)(noncapital intentional murder), is an essential element of the capital offense. Because provoked heat of passion, if established, will mitigate intentional murder to manslaughter, § 13A-6-2(b) and § 13A-6-3(a)(2), and will thereby negate this essential element of § 13A-5-40(18) capital murder, provoked heat of passion is as applicable as a mitigator to § 13A-5-40(18) capital murder as to § 13A-6-2(a)(1) noncapital intentional murder.
"[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case."
Mullaney v. Wilbur, 421 U.S. 684, 704, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). The appellate courts of this state endorse the use of the Alabama Pattern Jury Instructions in criminal cases. Ex parte Martin, 548 So.2d 496, 499 (Ala.1989); Stewart v. State, 730 So.2d 1203, 1211 (Ala.Crim.App. 1996) ("It is the preferred practice to use the pattern jury instruction contained in the Alabama Pattern Jury Instructions: Criminal, `Pattern Jury Instruction for Use in the Penalty Phase of a Capital Case.'"); Russaw v. State, 572 So.2d 1288, 1292-93 (Ala.Crim.App.1990)("A comparison of the charge given in this case with portions of the pattern jury instructions recommended by the Alabama Supreme Court reveals the glaring deficiencies of the jury instructions of the trial court.") If the defendant has injected the issue of provoked heat of passion in an intentional murder prosecution, the pattern jury instruction explaining the charge and its essential elements requires the State to prove beyond a reasonable doubt, as one of the essential elements, the negative proposition "[t]hat the defendant was not lawfully provoked to do the act which caused the death of the deceased by a sudden heat of passion." The full instruction reads:
"A person commits the crime of murder if he causes the death of another person, and in performing the act or acts which caused the death of that person, he intends to kill that person (or another person). A person does not commit murder, however, if he was moved to act by a sudden heat of passion caused by provocation recognized by law, and before there had been a reasonable time for the passion to cool and for reason to reassert itself.

*1034 "To convict, the state must prove beyond a reasonable doubt each of the following elements of murder:
"(1) That (name of deceased) is dead;
"(2) That the defendant (name of defendant) caused the death of (name of deceased) by (state the alleged act, e.g., shooting) him;
"(3) That in committing the act(s) which caused the death of (name of deceased) the defendant acted with intent; and
"(4) That the defendant was not lawfully provoked to do the act which caused the death of the deceased by a sudden heat of passion."
Alabama Pattern Jury Instructions Criminal, 3d ed., pp. 6-8 (1994)(emphasis added). The trial court never instructed the jury on this critical negative fourth elementthe absence of provoked heat of passionin any of the instructions, not even those applicable to noncapital murder,[1] and did not explain provoked heat of passion as applicable to capital murder in any terms.
The trial court exacerbated and then worse exacerbated these errors when the jury interrupted its deliberations to ask the trial court to reinstruct on the elements of capital murder, noncapital murder, and manslaughter. First, the trial court again omitted from the elements of capital murder and noncapital murder the critical element "[t]hat the defendant was not lawfully provoked to do the act which caused the death of the deceased by a sudden heat of passion." Second, in asking the jury, "I assume I need to go into the heat of passion and provocation issues that go along with manslaughter[, i]s that correct," the trial court told the jury, in effect, that heat of passion and provocation were topics distinct from the elements of capital murder and noncapital murder and not that the absence of provoked heat of passion was an essential element to be proved by the State beyond a reasonable doubt to obtain a conviction of either capital or noncapital murder. The foreperson's response, "[t]hat wasn't requested by anyone," evidences the jurors' failure to understand the elemental status of the absence of provoked heat of passion. The trial judge's sua sponte subsequent instructions on provoked heat of passion and manslaughter did not mention or suggest that the absence of provoked heat of passion constituted an essential element of either capital murder or noncapital murder or that the State bore the burden of proof on this element.
Finally, to the extent that this part of the sua sponte subsequent instruction may have associated provoked heat of passion with capital murder, that association was obscured if not eliminated by the trial judge's final unsuccessful effort, in response to further protests by defense counsel, to charge the jury correctly. While all of the pertinent instructions have already been quoted at length in this opinion, this final instruction is requoted here:
"Ladies and gentlemen, to make sure, the capital offense requires an intentional murder, in other words, an intent to kill someone. It cannot be a reckless capital murder. It has to be with the intent to kill someone. If you find that the Defendant's conduct was not intentional, *1035 but only reckless, then you cannot find him guilty of capital murder. So capital is an intentional murder where a gun was fired from a vehicle. Non-capital murder is an intentional murder where it did not involve a gun fired from a vehicle; or a reckless murder, even though it was from a vehicle or not. And then, of course, the manslaughter would involve the degrees I have mentioned, about heat of passion with legal provocation or reckless disregard of an obvious risk of death to someone. So you have those three categories. But the differences between capital and non-capital is whether or not it was in a vehicle and whether or not it was intentional."
(R. 1008-09, emphasis added.)
Ex parte Hamilton, 396 So.2d 123, 124 (Ala.1981), held an effort to cure defects in an oral charge ineffectual because the "[d]efective language appeared within the text of the oral charge at least three times, while the allegedly curative language appeared only once in the midst of the erroneous language." This principle applies to the instructions now before us to the extent that any language within them can be credited with any curative tendency.
"`[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged.'"
McMillan v. Pennsylvania, 477 U.S. 79, 85, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)(quoting Patterson v. New York, 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), emphasis omitted). Accord In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
"[I]t has been uniformly held that it is the mandatory duty of a trial judge to instruct the jury orally on the different and distinguishing elements of the offense charged and that in the absence of such instructions from the court, the jury could not intelligently comply with their duty as jurors. Miller v. State, Ala. Cr.App., 405 So.2d 41, 48 (1981)."
Ainsworth v. State, 465 So.2d 467, 471 (Ala.Crim.App.1984). In the case now before us, the trial judge did not succeed in performing his mandatory duty in this respect.
The Court of Criminal Appeals held that the issue of provoked heat of passion had not been injected sufficiently to require proper heat-of-passion instructions to McGriff's jury. McGriff v. State, 908 So.2d 961, 1002-03, 1004 (Ala.Crim. App.2000). According to the Court of Criminal Appeals, the provocation proffered by McGriff occurred five hours before the shooting, a "reasonable time for the passion to cool and for reason to reassert itself." Id. at 1002-03. This holding is wrong because it violates these principles:
"`It is a basic tenet of Alabama law that "a party is entitled to have his theory of the case, made by the pleadings and issues, presented to the jury by proper instruction, . . . and the [trial] court's failure to give those instructions is reversible error." Alabama Farm Bureau Mut. Ins. Service, Inc. v. Jericho Plantation, Inc., 481 So.2d 343, 344 (Ala. 1985).'"
Winner International Corp. v. Common Sense, Inc., 863 So.2d 1088, 1091 (Ala.2003)(quoting Volkswagen of America, Inc. v. Marinelli, 628 So.2d 378, 384-85 (Ala.1993)), and
"our decisions are to the effect that every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, *1036 however, weak, insufficient, or doubtful in credibility. Burns v. State, 229 Ala. 68, 155 So. 561 (1934)."
Chavers v. State, 361 So.2d 1106, 1107 (Ala.1978). The Court of Criminal Appeals erroneously adopted the evidence tending to support the theory more favorable to the Statethat the proffered provocation occurred five hours before the shooting. The law, however, bases McGriff's right to provoked heat-of-passion instructions on the evidence tending to support the theory more favorable to McGriff, Winner and Chavers, suprathe evidence tending to prove a continuum of events, each consuming only a few minutes, beginning with the confrontation at Granger's house, followed by the assault with the firebomb, the high-speed chase, the escape, the trip to Webb, and the return to Ashford, and culminating in the shooting at the parking lot of the abandoned club. Such a continuum would not necessarily constitute "a reasonable time for the passion to cool and for reason to reassert itself."
On the one hand, McGriff's requests for jury instructions and objections to jury instructions were imprecise. Further, McGriff at times acquiesced in the trial judge's erroneous statements to counsel to the effect that the trial judge had instructed the jury correctly. On the other hand, McGriff's requests and objections alerted the trial court to the importance of, and McGriff's desire for, proper and complete instructions. Indeed, the trial court acknowledged that provoked heat of passion was "a big important part of the defense's case." Thus, the common harmless-error argumentthat the defendant by his silence suggested that he himself did not deem the error particularly harmful, Kuenzel v. State, 577 So.2d 474, 489 (Ala.Crim.App.1990)does not apply to McGriff's case.
In Ex parte Minor, 780 So.2d 796, 799-800 (Ala.2000), this Court explained and held:
"[T]his Court's review of a death-penalty case allows us to address any plain error or defect found in the proceeding under review, even if the error was not brought to the attention of the trial court. Rule 39(a)(2)(D) and (k), Ala. R.App. P. `"`Plain error' only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings.'"' Ex parte Womack, 435 So.2d 766, 769 (Ala.), cert. denied, Womack v. Alabama, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983), quoting United States v. Chaney, 662 F.2d 1148, 1152 (5th Cir.1981). The plain-error standard applies only where a particularly egregious error occurs at trial. Ex parte Harrell, 470 So.2d 1309, 1313 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985). When the error `has or probably has' substantially prejudiced the defendant, this Court may take appropriate action. Rule 39(a)(2)(D) and (k), Ala. R.App. P.; Ex parte Henderson, 583 So.2d 305, 306 (Ala.1991), cert. denied, Henderson v. Alabama, 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992). Even under the stringent standards applicable to plain-error review, we conclude that the failure to properly instruct the jury in a capital-murder case as to the proper use of evidence regarding prior convictions constitutes reversible error."
Analogous reasoning applies to the case now before us. Because McGriff's entire trial strategy was not to contest guilt of the homicide but only to persuade the jury to convict him of a lesser offense than capital murder, the failure of the trial court to charge the jury accurately on provoked heat of passion as it applied to *1037 the capital murder charge constitutes plain error. For this error, McGriff's conviction and sentence must be reversed and the case remanded for a new trial.

Instructions on Remand
The decision of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), prompts us to supply some direction to be followed if, upon a retrial of McGriff's case, the jury again finds him guilty of capital murder. We will identify the pertinent provisions of the Alabama death penalty statutory scheme, §§ 13A-5-39 et seq., Ala.Code 1975, and we will explain the effect of Ring upon this scheme.
Section 13A-5-45(f) applies to a defendant who has been found guilty of a capital offense as defined in § 13A-5-40. Section 13A-5-45(f) provides: "Unless at least one aggravating circumstance as defined in Section 13A-5-49 exists, the sentence shall be life imprisonment without parole." Ring holds that the Sixth Amendment to the United States Constitution requires that any fact which must exist before state law will allow a death sentence, as distinguished from a lesser sentence, to be imposed must be found by a jury beyond a reasonable doubt. 536 U.S. at 589, 602-05, 609, 122 S.Ct. 2428. Ring explains that such a fact "operate[s] as the functional equivalent of a greater offense," the capital offense including all criteria for actual imposition of the death penalty as compared with the capital offense lacking one or more such criteria. 536 U.S. at 609, 122 S.Ct. 2428. The Arizona statutory scheme at issue in Ring called that essential fact an "aggravating factor." Id. The Alabama counterpart is an "aggravating circumstance" as identified by § 13A-5-49.
Ex parte Waldrop, 859 So.2d 1181, 1187-88, 1190 (Ala.2003), recognizes that Ring, as applied to the Alabama statutory scheme, forecloses the trial court from imposing a death sentence unless the jury has unanimously found beyond a reasonable doubt the existence of at least one § 13A-5-49 aggravating circumstance. Citing and quoting the second sentence of § 13A-5-45(e) and the first sentence of § 13A-5-50, Ex parte Waldrop holds that, if the indictment charges the defendant with a capital offense which, as defined by the applicable subsection of § 13A-5-40(a) (§ 13A-5-40(a)(2) robbery-murder in Ex parte Waldrop), already includes one of the § 13A-5-49 aggravating circumstances (§ 13A-5-49(4) murder during a robbery in Ex parte Waldrop), then a guilty verdict on that charge in the guilt phase of the trial satisfies the requirement of Ring, as applied to the Alabama statutory scheme, for a unanimous jury finding beyond a reasonable doubt of the existence of at least one aggravating circumstance to support a death sentence. 859 So.2d at 1187-88, 1190.
Ex parte McNabb, 887 So.2d 998 (Ala. 2004), addresses the application of Ring to a death sentence dependent on an aggravating circumstance which is not already included in the § 13A-5-40(a) definition of the particular capital murder offense charged in the indictment. Ex parte McNabb recognizes that Ring, as applied to the Alabama statutory scheme, forecloses the trial court from imposing a death sentence for this kind of capital offenseone defined by a subsection of § 13A-5-40(a) which does not include an aggravating circumstance as part of the definition of the offenseunless, in the sentencing phase of the trial, the jury has unanimously found beyond a reasonable doubt the existence of at least one aggravating circumstance.
The capital offense charged against McGriff in the case now before us is this *1038 latter kind, in that the definition of the charged capital murder offense in § 13A-5-40(a)(18) ("[m]urder committed by or through the use of a deadly weapon fired or otherwise used within or from a vehicle") does not include any one of the § 13A-5-49 aggravating circumstances. Therefore, even if the jury finds McGriff guilty in a retrial, Ring, as applied to the Alabama statutory scheme, will foreclose the trial court from imposing a death sentence unless, during the penalty phase of the trial, the jury unanimously finds beyond a reasonable doubt the existence of the aggravating circumstance proffered by the State. Ex parte McNabb.
Section 13A-5-46(e)(1) reads: "If the jury determines that no aggravating circumstances as defined in Section 13A-5-49 exist, it shall return an advisory verdict recommending to the trial court that the penalty be life imprisonment without parole." Ring requires that this subsection be applied in these terms: If the jury determines that no aggravating circumstance as defined in § 13A-5-49 exists, the jury must return a verdict, binding on the trial court, assessing the penalty of life imprisonment without parole.
At no time during a retrial of the charge against McGriff should the jury be told that its decision on the issue of whether the proffered aggravating circumstance exists is "advisory" or "recommending." Rather, the jury should be instructed that, if it determines that the aggravating circumstance does not exist, the jury must return a verdict, binding on the trial court, assessing life imprisonment without the possibility of parole as the penalty. The jury should further be instructed that, if and only if it unanimously finds the aggravating circumstance to exist beyond a reasonable doubt, the jury should then proceed to weigh the aggravating circumstance against the mitigating circumstance or circumstances, if any, and to return a verdict in accordance with § 13A-5-46(e)(2) and (3) and (f), which provide:
"(e) After deliberation, the jury shall return an advisory verdict as follows:
"....
"(2) If the jury determines that one or more aggravating circumstances as defined in Section 13A-5-49 exist but do not outweigh the mitigating circumstances, it shall return an advisory verdict recommending to the trial court that the penalty be life imprisonment without parole;
"(3) If the jury determines that one or more aggravating circumstances as defined in Section 13A-5-49 exist and that they outweigh the mitigating circumstances, if any, it shall return an advisory verdict recommending to the trial court that the penalty be death.
"(f) The decision of the jury to return an advisory verdict recommending a sentence of life imprisonment without parole must be based on a vote of a majority of the jurors. The decision of the jury to recommend a sentence of death must be based on a vote of at least 10 jurors. The verdict of the jury must be in writing and must specify the vote."
The vote of the jury in its sentencing phase verdict in McGriff's case now before us was ten in favor of death and two in favor of life. The jury did not expressly reveal the number who found the existence of the proffered aggravating circumstance. Ex parte McNabb held that even a non-unanimous death recommendation by the jury proved that the jury, including the jurors who voted against the death recommendation, had unanimously found a proffered aggravating circumstance, even though it was not included within the § 13A-5-40(a) definition of the particular capital murder offense charged in the indictment, *1039 because the trial court had expressly instructed the jury that they could not proceed to a vote on a death recommendation unless they had already unanimously agreed that the aggravating circumstance existed. Ex parte McNabb, 887 So.2d at 1005. Ex parte McNabb did not decide whether or how a court could deduce from a life recommendation whether or not the jurors had unanimously found the existence of at least one aggravating circumstance. The significance of this question is that a life recommendation based on a unanimous finding beyond a reasonable doubt that an aggravating circumstance existed, followed by a conclusion that the aggravating circumstance did not outweigh one or more mitigating circumstances, § 13A-5-46(e)(2), would be subject to an override by the trial court imposing a death sentence, while a life recommendation based on a lack of a unanimous finding beyond a reasonable doubt that an aggravating circumstance existed would not be subject to such an override, Ring, Ex parte Waldrop, Ex parte McNabb, supra. Moreover, the Alabama death penalty statutory scheme does not specify, and this Court has not yet decided, how many jurors' votes would be necessary to a determination by the jury "that no aggravating circumstances ... exist," § 13A-5-46(e)(1).
All of these considerations and potential issues militate in favor of a prospective direction by this Court that the count of the jurors' votes on the issue of the existence of an aggravating circumstance be expressly recorded on the verdict form. Therefore, this Court authorizes the use of the following penalty-phase special interrogatory if a retrial of McGriff's case results in a verdict of guilty of the capital offense:
"State of Alabama v. Dennis Demetrius McGriff

"The first question before the jury is whether the State has proven beyond a reasonable doubt that, in committing the capital offense charged in the indictment, the defendant knowingly created a great risk of death to many persons.
"The number of jurors who answer and vote `yes' to the first question is ____
"The number of jurors who answer and vote `no' to the first question is ____
 "___________________________
 Foreperson's signature."

Conclusion
For the reasons explained, the decision of the Court of Criminal Appeals affirming the defendant's conviction and sentence is reversed. With the instructions stated, this case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
NABERS, C.J., and HOUSTON, SEE, LYONS, HARWOOD, and WOODALL, JJ., concur.
BROWN and STUART, JJ., dissent.
STUART, Justice (dissenting).
The majority holds that the trial court's failure to instruct the jury accurately on the provoked-heat-of-passion mitigating circumstance as that circumstance applied to the capital-murder charge was plain error and that, therefore, McGriff's conviction must be reversed. I disagree. After reviewing the evidence, I conclude that the evidence does not establish as a matter of law that an instruction on heat-of-passion provocation was required. Therefore, I respectfully dissent.
The Court of Criminal Appeals in Turner v. State, 708 So.2d 232, 234 (Ala.Crim. App.1997), recognized:

*1040 "Section 13A-6-3, Code of Alabama 1975, specifies that, in order to reduce murder to manslaughter, the heat of passion must have been caused by a provocation recognized by law. Alabama courts have acknowledged such legal provocation in only two circumstances: (1) when the accused catches his/her spouse in the act of adultery; and (2) when the accused has been assaulted or was faced with what appeared to be an imminent assault. Hill v. State, 699 So.2d 974 (Ala.Cr.App.1997)."
The Court of Criminal Appeals has further stated:
"Provocation has been defined as that treatment by another which arouses anger or passion, which produces in the minds of persons ordinarily constituted the highest degree of exasperation, rage, anger, sudden resentment, or terror. Johnson v. State, 129 Wis. 146, 108 N.W. 55 (1906). Provocation is peculiar to homicide cases. Malice, express or implied, distinguishes murder from manslaughter; and a sudden transport of passion, caused by adequate provocation, if it suspends the exercise of judgment, and dominates volition, so as to exclude premeditation and a previously formed design, although it does not entirely dethrone reason, is sufficient to reduce the killing to manslaughter. Davis v. State, 214 Ala. 273, 107 So. 737 (1926), overruled in part on other grounds, Smith v. State, 230 Ala. 18, 158 So. 808 (1935); Smith v. State, 83 Ala. 26, 3 So. 551 (1888).
"While provocation must be of a nature calculated to influence the passions of the ordinary reasonable man, the courts have reached different conclusions as to what factual situations are embraced within the doctrine. The trial court must, as a preliminary question, decide as a matter of law whether offered evidence of provocation has any tendency to prove mitigating circumstances; when so construed and admitted, the questions of sufficient provocation and cooling time are then solely for the jury. Commentary to § 13A-6-3, Code of Alabama 1975."
Nelson v. State, 511 So.2d 225, 240-41 (Ala.Crim.App.1986)(emphasis added).
In McNeill v. State, 102 Ala. 121, 15 So. 352 (1894), this Court discussed provocation; the Court in McNeill stated that if a man
"does not strike and kill until after there has been time for his passion to cool and for reason to reassert itself, or if he strikes and kills immediately, but is not moved thereto by the heat of passion, but by prior malice, hatred, a desire to avenge the wrong done him, or by any other motive, or upon any design whatever except such as is engendered by the paroxysm of rage into which he is thrown by this extreme provocation, he is guilty of murder."
102 Ala. at 126, 15 So. at 354. The Court further stated that, "[t]he absence of motive is essential to the ascription of the act of unreasoning fury, and where there is motive the killing is murder, and not manslaughter." 102 Ala. at 127, 15 So. at 354. Moreover, mere words, no matter how insulting or abusive, cannot reduce a killing to manslaughter. Watson v. State, 82 Ala. 10, 2 So. 455 (1887).
Thus, for an instruction on heat-of-passion provocation to be appropriate in this case the trial court had to conclude that the evidence of provocation had a tendency to prove a mitigating circumstance. Indeed, to support such an instruction the evidence must tend to show that McGriff shot the victim as a consequence of sudden passion kindled by what was apparently about to happen to him at the victim's hands.
*1041 The majority concludes that McGriff's evidence established a "continuum of events, each consuming only a few minutes," that adequately injected heat of passion into the case so that the provocation that caused McGriff to act was sufficient as a matter of law. The continuum, however, is merely a series of events that provided time for McGriff to develop a plan for revenge and a reasonable time for McGriff's passion to cool and for reason to reassert itself.
Defense witness Frederick Shaw, on direct examination, testified that Jerry Thompson, Scat Walker, and the victim approached him and McGriff at Boo Granger's house in Ashford between 12:00 p.m. and 12:30 p.m. and that the throwing of the firebomb and the high-speed chase immediately followed. Shaw testified that neither he nor McGriff had a weapon at Granger's house. Rosa Mae Shaw, Frederick Shaw's mother, corroborated her son's testimony that the chase occurred in the afternoon. Shaw testified that approximately 30 minutes passed from the time he and McGriff left Granger's house and engaged in the high-speed chase until they arrived at Hayes's house in Webb. Shaw testified that they were only at Hayes's house about 10 minutes before they left to return to Ashford. Shaw explained that he refused to drive his car back to Ashford, that they rode in Hayes's car with Hayes as the driver and McGriff as the front-seat passenger, and that when they arrived in Ashford, Shaw insisted upon being dropped off before Hayes drove down Seventh Street, the street where the victim would likely be. Shaw testified that he told McGriff, "Well, y'all just put me off because I am worrying about my mom. I am already shook up, don't know what's going on, y'all just put me off and I will just walk." Within minutes after Shaw got out of the car, he heard gunshots. The evidence indicated that the victim was shot at 5:30 p.m.
Viewing this evidence in a light most favorable to McGriff, the trial court could not find legal provocation as a matter of law. The evidence indicates that McGriff's reaction to the physical assault by the victim was not immediate, but was calculated and premeditated. McGriff did not shoot the victim immediately or suddenly, but traveled to Hayes's house, which was approximately 8 to 10 miles away, acquired a weapon, did not drive himself back to Ashford, but arranged for a driver for the return trip because Shaw refused to drive and McGriff needed to be a passenger so that he could position himself to shoot his weapon, and then returned the 8 to 10 miles to Ashford to search for the victim. McGriff's acts establish that between the time the victim assaulted McGriff and the time McGriff shot the victim, McGriff developed and implemented a plan for vengeance; McGriff's conduct does not reflect that he was acting out of heat of passion. See Brewer v. State, 160 Ala. 66, 49 So. 336, 338 (1909)("If the accused seeks the fatal difficulty, or seeks the deceased for the purpose of provoking an encounter, and then brings it on, or if, having had a previous difficulty, he goes one or two miles and borrows a shotgun, and, returning to the road along which he knows his adversary is coming, waits till his adversary arrives, or advances to meet him, and accosts him (as defendant accosted deceased on this occasion), and, when his adversary replies and starts towards or from him, thereupon shoots and slays him, he is guilty of murder....").
The evidence also clearly indicates that in this case reason had time to reassert itself. Shaw was a victim of the firebomb and high-speed chase, just like McGriff. Yet Shaw refused to drive his car back to Ashford and refused to ride with McGriff *1042 down Seventh Street to where all the occupants of Hayes's car knew the victim would be. Indeed, Shaw told McGriff, "I am already shook up, don't know what's going on, y'all just put me off and I will just walk." Shaw's testimony and his actions indicate that there was "a reasonable time for the passion to cool and reason to reassert itself." See Peraita v. State, 897 So.2d 1161 (Ala.Crim.App.2003)(holding that the trial court could have reasonably concluded that the defendant in causing the victim's death did not act out of heat of passion and/or before a reasonable time for the passion to cool had passed when the defendant had been assaulted approximately eight minutes before the defendant held his attacker while another stabbed him). I recognize that McGriff may have been more upset than Shaw because the victim and others had threatened to rape McGriff's pregnant girlfriend; however, mere words cannot reduce a killing to manslaughter. Watson, supra.
Thus, considering the evidence in a light most favorable to McGriff, I conclude that the evidence does not have a tendency to establish any mitigating circumstances. McGriff's evidence established that his reaction to the assault by the victim was not sudden; he not only had time to acquire a weapon, but also to find his victim. Additionally, the evidence indicated that any passion had had time to coolhis wheelman refused to participate in the search for the victim. Clearly, this evidence does not have any tendency to prove mitigating circumstances. Because the evidence does not support a jury instruction on heat of passion, there was no error in the trial court's omission of such an instruction with regard to the capital-murder instruction.
Because I conclude that an instruction on the provoked-heat-of-passion mitigating circumstance was not required, I express no opinion on the propriety of the trial court's instruction. Additionally, the instruction given to the trial court in the majority opinion are problematic gratis dicta. This Court is not authorized to rewrite the capital-murder statutes; this Court can only interpret the statutes enacted by the Legislature. See Mallisham v. Kiker, 630 So.2d 420, 423 (Ala. 1993)("`Courts are supposed to interpret statutes, not to amend or repeal them under the guise of judicial interpretation.' Parker v. Hilliard, 567 So.2d 1343, 1346 (Ala.1990)."). I further note that the remand instructions improperly expand the United States Supreme Court's holding in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); I believe it is improper for this Court to presume a future holding of the United States Supreme Court on an issue it has yet to visit and a statute it has yet to construe.
BROWN, J., concurs.

On Application for Rehearing
JOHNSTONE, Justice.
On application for rehearing, we write further to one of the arguments reasserted by the State. While our opinion on original deliverance addresses the argument correctly, we will elaborate here.
The State argues that "McGriff was not entitled to a charge on heat of passion given the unchallenged evidence elicited from a defense witness [Shaw] establishing that the alleged `provocation' occurred five hours before the murder." While part of witness Shaw's testimony is subject to an inference of such a cooling period, the rest of his testimony is subject to the inference described in our opinion on original deliverance: "a continuum of events, each consuming only a few minutes, beginning with the confrontation at Granger's house, followed by the assault with the firebomb, the high-speed chase, the escape, the trip to Webb, and the *1043 return to Ashford, and culminating in the shooting at the parking lot of the abandoned club." Ex parte McGriff, 908 So.2d 1024, 1036 (Ala.2004).
Resolving conflicts or contradictions in a witness's own testimony is the prerogative of the jury. Bentley v. Independent Life & Acc. Ins. Co., 47 Ala.App. 15, 17, 249 So.2d 631, 634 (Civ.1971):
"Any conflict in the evidence as to a material point in issue, though such conflict arises out of contradictory statements or acts of one's own witness, presents a matter for the jury's determination.. . . [I]t is the sole province of the jury to resolve such conflict. . . ."
Even in the case of the testimony of a party himself or herself, this Court has held:
"The fact that a party offers contradictory testimony does not render his testimony unbelievable as a matter of law. . . . Contradictions in testimony may diminish a party's credibility, but the truthfulness of the testimony is an issue to be resolved by the trier of fact."
Dearmon v. Dearmon, 492 So.2d 1004, 1007 (Ala.1986); and
"The fact that a plaintiff makes contradictory statements, in his own case, does not justify the court in directing the verdict against the plaintiff. Which version of plaintiff's testimony should be believed is a question for the jury, although the fact that his testimony is conflicting could be considered by the jury in weighing the testimony and treated as a circumstance against him."
Semmes Nurseries, Inc. v. McVay, 279 Ala. 42, 45, 181 So.2d 331, 333 (1965)(emphasis added).
"When the evidence presents two reasonable and conflicting constructions, one favorable and the other unfavorable to the defendant, it is for the jury and not the court to determine and decide which they will believe. Little v. State, 89 Ala. 99, headnote 3, 8 So. 82 [(1890)]."
Powe v. State, 214 Ala. 91, 92, 106 So. 503, 504 (1925).
"`The weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and inferences to be drawn from the evidence are for the jury.' Smith v. State, 698 So.2d 189, 214 (Ala.Crim.App.1996), aff'd, 698 So.2d 219 (Ala.), cert. denied, 522 U.S. 957, 118 S.Ct. 385, 139 L.Ed.2d 300 (1997)."
Ex parte Roberts, 735 So.2d 1270, 1278 (Ala.1999)(emphasis added).
"In charging the jury, it was incumbent on the judge to give the law applicable to all theories presented by the evidence. This was necessary to enable the jury to make a judgment in view of the testimony before them. Glover v. State, 21 Ala.App. 423, 109 So. 125 [(1926)]."
Shields v. State, 52 Ala.App. 690, 697, 296 So.2d 786, 792 (Crim.1974).
"[I]t is the duty of the court to declare the law ..., not ignoring the evidence on any point because he may regard it as weak or inconclusive. Smith v. State, 68 Ala. 424 [(1880)]."
Degro v. State, 34 Ala.App. 232, 235, 38 So.2d 354, 356 (1949).
This application for rehearing does not, to paraphrase Rule 40(b), Ala. R.App. P., reveal any points of law or any facts that this Court has overlooked or misapprehended. Therefore, the application is overruled.
APPLICATION OVERRULED.
*1044 NABERS, C.J., and HOUSTON, SEE, LYONS, HARWOOD, and WOODALL, JJ., concur.
BROWN and STUART, JJ., dissent.
NOTES
[1] Indeed, in instructing the jury on noncapital murder, the trial court erroneously countermanded Mullaney, supra, 421 U.S. at 704, 95 S.Ct. 1881, by shifting the burden of proof on the provoked heat-of-passion issue from the State and to the defendant by telling the jury: "And if you were convinced that the heat of passion and lawful provocation was involved, as I have defined it to you, then your verdict would be manslaughter." (R. 954-55, emphasis added).